UNITED STATES, Appellee

v.

Candice N. CIMBALL SHARPTON, Senior Airman
U.S. Air Force, Appellant

No. 14-0158

Crim. App. No. 38027

United States Court of Appeals for the Armed Forces

Argued April 29, 2014

Decided June 13, 2014

BAKER, C.J., delivered the opinion of the Court, in which
ERDMANN, STUCKY, RYAN, and OHLSON, JJ., joined.

<u>Counsel</u>

For Appellant:  Captain Nicholas D. Carter (argued); Captain
Isaac C. Kennen.

For Appellee:  Lieutenant Colonel C. Taylor Smith (argued);
Colonel Don M. Christensen (on brief); Gerald R. Bruce, Esq.


Military Judge:  W. Thomas Cumbie


**<u>THIS OPINION IS SUBJECT TO REVISION BEFORE FINAL PUBLICATION</u>.**

Chief Judge BAKER delivered the opinion of the Court.

Appellant asserts that the United States Air Force Court of Criminal Appeals (CCA) abused its discretion in finding legally sufficient evidence to support her conviction for larceny from the Air Force.  Appellant argues that the victim in the case of credit card larceny is necessarily the bank issuing the card or the merchants selling the goods purchased.  We disagree.  In this case, as in United States v. Lubasky, the victim of the larceny is the person or entity suffering the financial loss or deprived of the use or benefit of the property at issue.  68 M.J. 260, 263-64 (C.A.A.F. 2010).

FACTS

In April 2010, the Air Force issued a General Purchase Card (GPC) to Senior Airman Candace N. Cimball Sharpton, enabling her to purchase medical supplies for the Air Force hospital at Keesler Air Force Base in Mississippi.  The CCA found that the GPC was established through a government contract with U.S. Bank, which issued the cards to authorized cardholders who were only allowed to use them for government purchases.  United States v. Cimball Sharpton, 72 M.J. 777, 781 (A.F. Ct. Crim. App. 2013).  After GPC charges were reviewed by an Air Force approving official, the Air Force would pay them off using Department of Defense funds appropriated for Air Force spending.  The actual payments were made by the Defense Finance Accounting

2

Service (DFAS) with money from an account allotted to the U.S. Air Force.

In July 2010, an approving official noticed some suspicious charges on Appellant's account from stores including the Army and Air Force Exchange Service (AAFES), Walgreens, and Walmart. After spotting such charges for several consecutive months, in September 2010 the official reported them to her superior. A subsequent investigation revealed Appellant had purchased approximately $20,000 worth of personal goods using her GPC at AAFES, Walgreens, and Walmart stores. Cimball Sharpton, 72 M.J. at 779. Air Force investigators collected surveillance videos and store receipts confirming Appellant's unauthorized purchases. DFAS subsequently paid U.S. Bank for all the unauthorized charges made by Appellant.

Appellant was charged with, among other things, one specification of larceny in violation of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921 (2012). The larceny specification stated:

> In that SENIOR AIRMAN CANDICE N. CIMBALL SHARPTON, 81st
> Medical Support Squadron, United States Air Force,
> Keesler Air Force Base, Mississippi, did, at or near the
> state of Mississippi, on divers occasions, between on or
> about 1 June 2010 and on or about 30 September 2010,
> steal money, military property, of a value greater than
> $500.00, the property of the United States Air Force.

3

Appellant was tried by a military judge alone.  Though she pled not guilty, Appellant did not dispute any elements of the larceny charge.  Appellant stipulated to the existence of video surveillance of Appellant making the alleged transactions.  She also stipulated to the fact that DFAS paid U.S. Bank for the unauthorized charges:

> MJ:  [D]efense counsel, you're willing to stipulate that the charges that the accused made on her government purchase card to Walgreens in the amount of approximately 2,400 dollars, and to AAFES in the amount of 18,333 dollars and 78 cents, that those charges were actually paid for by the Defense Accounting and Finance Service [sic]?
>
> [DC]:  Yes, your honor.

Appellant was convicted of one specification of larceny in violation of Article 121, UCMJ; one specification of using oxycodone in violation of Article 112a, UCMJ; one specification of using cocaine in violation of Article 112a, UCMJ; and one specification of fraudulent enlistment in violation of Article 83, UCMJ.[1]  She was sentenced to a bad-conduct discharge, twelve months of confinement, reduction to E-1, and a $20,000 fine, with six months of additional confinement if the fine was not paid.  The convening authority approved the sentence except for the six months contingent confinement.  Cimball Sharpton, 72 M.J. at 779.

---

[1] Appellant was found not guilty on a second oxycodone charge. The military judge removed the "military property" provision from the larceny specification.

Before the CCA, Appellant argued that the guilty finding on the larceny specification was legally and factually insufficient because the wrong victim was named in the charge. Id. The CCA rejected this argument, stating that larceny was properly charged with the Air Force as victim because:

> The appellant's misconduct could not have been charged as a larceny from the merchants offering the goods, because those merchants made a sale for which they were compensated, and therefore they did not lose anything of value. Similarly, the appellant's misconduct could not have been charged as a larceny against US Bank, because US Bank was wholly repaid for the appellant's purchases, just as it would be for authorized purchases. The only victim in this case was the United States Air Force, whose funds were obligated by the appellant's unauthorized, repeated purchases for her personal use.

Id. at 781. The CCA affirmed the findings and sentence. Id. at 786.

Appellant then appealed to this Court, which granted hearing on the following issue:

> WHETHER THE AIR FORCE COURT ABUSED ITS DISCRETION IN FINDING THE EVIDENCE LEGALLY SUFFICIENT TO SUPPORT A CONVICTION FOR LARCENY FROM THE AIR FORCE.

## DISCUSSION

Questions of law, including questions of legal sufficiency, are reviewed by this Court de novo. United States v. Kearns, 73 M.J. 177, 180 (C.A.A.F. 2014). This Court has adopted the Supreme Court's standard for legal sufficiency, namely, that

"'the relevant question'" an appellate court must answer is

"'whether, after viewing the evidence in the light most

favorable to the prosecution, any rational trier of fact could

have found the essential elements of the crime beyond a

reasonable doubt.'"  United States v. Oliver, 70 M.J. 64, 68

(C.A.A.F. 2011) (quoting Jackson v. Virginia, 443 U.S. 307, 319

(1979)).

> The elements of the crime of larceny are:
>
> (a)  That the accused wrongfully took, obtained, or
>      withheld certain property from the possession of
>      the owner or of any other person;
>
> (b)  That the property belonged to a certain person;
>
> (c)  That the property was of a certain value or of
>      some value; and
>
> (d)  That the taking, obtaining, or withholding by the
>      accused was with the intent permanently to
>      deprive or defraud another person of the use and
>      benefit of the property or permanently to
>      appropriate the property for the use of the
>      accused or for any person other than the owner.

Manual for Courts-Martial, United States pt. IV, para. 46.b.

(2012 ed.) (MCM).  The term larceny "encompasses and

consolidates what in the past were separate crimes, i.e.,

larceny, larceny by trick, embezzlement, and obtaining property

by false pretenses."  Lubasky, 68 M.J. at 263.  "Any of the

various types of larceny under Article 121 may be charged and

proved under a specification alleging that the accused 'did

6

steal' the property in question." MCM pt. IV, para.
46.c.(1)(a).

A 2002 amendment to the MCM specifically addresses
identifying the victim in a larceny charged under Article 121,
UCMJ, and committed through credit, debit, and electronic
transactions: "Wrongfully engaging in a credit, debit, or
electronic transaction to obtain goods or money is an obtaining-
type larceny by false pretense. Such use to obtain goods is
usually a larceny of those goods from the merchant offering
them." MCM pt. IV, para. 46.c.(1)(h)(vi) (emphasis added). The
Drafters' Analysis states that the amendment was included to
"provide guidance on how unauthorized credit, debit, or
electronic transactions should usually be charged." MCM
Analysis of the Punitive Articles app. 23 at A23-17 (emphasis
added). However, the analysis leaves open the possibility that
"[a]lternative charging theories are also available." Id.

We view this as a case where such an alternative charging
theory should apply, given that it was neither the merchants nor
U.S. Bank but the Air Force who suffered the financial loss
resulting from Appellant's larceny. Based on the facts
presented, the Air Force agreed to pay U.S. Bank for all GPC
purchases.[2] Cimball Sharpton, 72 M.J. at 781. It is clear -- in

---

[2] See also Air Force Instruction 64-117, which states that:

7

fact stipulated to by Appellant -- that DFAS paid U.S. Bank the full amount owed for the unauthorized charges.  In view of the elements of Article 121, UCMJ, Appellant (a) wrongfully obtained property (namely the Air Force's appropriated money) that (b) belonged to a certain person (the Air Force) and (c) was of a certain value.  By the time we reach element (d) the accused has taken, obtained, or withheld that money with the intent of wrongfully and permanently depriving the Air Force of its use.  No other party suffered financially as a result of Appellant's actions.

Both the Government and the CCA attempt to distinguish this case from our decision in Lubasky.  We find no need to do so.  In Lubasky, as in this case, the victim of the credit card larceny and the victim of the fraudulent ATM and debit transactions were those who suffered the financial loss.  68

---

Charges on the cardholder statement that involve misuse or abuse by the cardholder are not disputable with the Bank.  If the transaction was processed in accordance with the controls established (i.e., within the purchase limits, not from a vendor with a blocked Merchant Category Code) then the Bank has fulfilled its responsibilities under the contract and the government is obligated to make payment for the transaction.  The government must seek restitution from the employee for any losses as a result of their improper transaction.

Dep't of the Air Force, Instr. 64-117, Air Force Government-Wide Purchase Card (GPC) Program para. 3.8.5.2 (Sept. 20, 2011).

M.J. at 263-64.  Lubasky is fully consistent with our decision today.

The Air Force suffered the financial loss in this case. Therefore, the Government was correct in charging larceny from the Air Force.  Since the Air Force was a proper victim, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

DECISION

The decision of the United States Air Force Court of Criminal Appeals is affirmed.