# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
COOK, TELLITOCCI, and HAIGHT
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private E2 ALVIN C. ENDSLEY**
**United States Army, Appellant**

ARMY 20130052

Headquarters, Fort Riley
Jeffery R. Nance, Military Judge
Lieutenant Colonel John A. Hamner, Staff Judge Advocate

For Appellant: Colonel Kevin Boyle, JA; Lieutenant Colonel Peter Kageleiry, Jr., JA; Major Vincent T. Shuler, JA; Captain Aaron R. Inkenbrandt, JA (on brief); Colonel Kevin Boyle, JA; Lieutenant Colonel Jonathan F. Potter, JA; Captain Aaron R. Inkenbrandt, JA (on reply brief).

For Appellee: Colonel John P. Carrell, JA; Lieutenant Colonel James L. Varley, JA; Major Kenneth W. Borgnino, JA; Captain Ryan D. Pyles, JA (on brief).

17 October 2014

--------------------------------
OPINION OF THE COURT
--------------------------------

HAIGHT, Judge:

A military judge sitting as a special court-martial convicted appellant, pursuant to his pleas, of wrongful use of marijuana and larceny, in violation of Articles 112a and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 912a and 921 (2012) [hereinafter UCMJ]. The military judge sentenced appellant to a bad-conduct discharge, confinement for six months, and reduction to the grade of E-1. Pursuant to a pretrial agreement, the convening authority approved only five months of confinement but otherwise approved the adjudged sentence.

This case is before us for review pursuant to Article 66, UCMJ. Appellant raises two assignments of error, both of which merit discussion, and one of which merits relief.

## BACKGROUND

Appellant secretly copied down the debit card number of a fellow squad member and friend, Specialist (SPC) DT. While SPC DT was deployed to Afghanistan and appellant remained at home station, appellant wrongfully used that number to purchase food from the local restaurants of Domino's and Chinese Chef in addition to buying erotic and fantasy comic books from Amazon.com. Appellant unlawfully used SPC DT's debit card number on no less than 27 occasions, with the greatest single purchase totaling $100.87.

Appellant specifically stipulated that when he used SPC DT's debit card number, he was using, spending, and stealing "money" from SPC DT's bank account. Moreover, during the providence inquiry, appellant admitted multiple times that he "t[ook] money from [SPC DT's] bank account using his debit card number."

For his misconduct, appellant was originally charged with 23 specifications of larceny of money from SPC DT. At trial, before pleas, the military judge granted an unopposed government motion to amend the first larceny specification, making it a "mega-spec with all the other [larceny] specifications," by changing "it from a single incident [on or about 22 May 2012] to 'between on or about 22 May 2012 and on or about 25 July 2012, steal money of a value of about $1,000.00, the property of [SPC DT].'" Specifications 2 through 23 were then dismissed. Later, after pleas, the military judge, without objection, added the words "on divers occasions" to the sole remaining larceny specification.

## LAW AND DISCUSSION

### *Proper Victim*

In his first assignment of error, appellant claims the military judge abused his discretion by accepting appellant's guilty plea to larceny from SPC DT. Essentially, appellant argues the true victim in this case is not SPC DT, but the merchants who sold goods to appellant in exchange for SPC DT's money. This claim is based upon our superior court's rulings in *United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010); *United States v. Gaskill*, 73 M.J. 207 (27 Jan. 2014) (summ. disp.); and *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014). After comparative analysis and application of these precedential and controlling cases, we find no error.

In *Lubasky*, instead of simply resting on the expansive notion that the victims of a larceny are any persons or entities with a greater right to possession than the thief,[1] the Court of Appeals for the Armed Forces (CAAF) determined the "proper

---

[1] *See United States v. Faircloth*, 45 M.J. 172 (C.A.A.F. 1996); *United States v. Evans*, 37 M.J. 468, 472 (C.M.A. 1993).

subject of the credit-card-transaction larcenies" was not the person to whom the credit card pertained because nothing was obtained from that person. 68 M.J. at 263. Accordingly, CAAF found the language alleging an improper victim constituted a variance with the proof at trial, determined that a finding by exception and substitution was not within its purview, and set aside those particular findings of guilty. *Id.* at 265.

On the other hand, regarding unauthorized debit card transactions from the same victim's bank account, CAAF determined the person whose name appeared on the debit card was a proper victim and consequently affirmed those findings of guilty. *Id.* at 264. Acknowledging that the *Manual for Courts-Martial* urges that the wrongful engaging in a debit transaction to obtain goods or money is "'*usually* a larceny of those goods from the merchant offering them,'" CAAF nevertheless determined that the account holder was a proper victim because the thief in that case exceeded his authority with respect to that account. *Id.* at 263 (quoting *Manual for Courts-Martial*, *United States* (2002 ed.) [hereinafter *MCM*], pt. IV, ¶ 46.c(1)(h)(iv) (emphasis added)).

The twofold determination that the unauthorized use of another's credit card is theft from the merchant whereas the unauthorized use of another's debit card can be theft of money from the account holder is understandable. One who purchases goods with a credit card obtains those goods in exchange for a promise to pay. Specifically, in credit card transactions, an item is obtained via a loan or line of credit offered by the card issuer to the cardholder, hence the label "credit card." By contrast, one who purchases goods with a debit card obtains those goods in exchange for money which results in an immediate deduction from the cardholder's account. In debit card transactions, an item is obtained via an immediate expenditure from and debit against the cardholder's account, hence the label "debit card."

This same logic carries over to *Cimball Sharpton*. In that case, the thief was charged with and convicted of stealing money from the United States Air Force by the unauthorized use of a government general purchase card to obtain personal goods from various merchants. *Cimball Sharpton*, 73 M.J. at 300. Our superior court reasoned that because the Air Force was contractually obligated to pay for those unauthorized transactions and was strictly foreclosed from disputing the transaction with the bank, and because the merchants were paid for the goods they provided, the proper victim was the Air Force. *Id.* at 301-02. The court focused on who suffered the financial loss.

In the case sub judice, we again point out that SPC DT is the one who suffered financial loss in that his funds were used and his bank account was depleted. By contrast, Domino's, Chinese Chef, and Amazon suffered no apparent financial loss in that they were paid for the food and products they provided.

We now turn to CAAF's summary disposition in *Gaskill*. In that case, similar to this one, the thief wrongfully used fellow service members' debit cards to obtain pizzas and video games. *United States v. Gaskill*, ARMY 20110028, 2013 CCA LEXIS 605 (Army Ct. Crim. App. 12 Aug. 2013) (summ. disp.), *rev'd in part*, 73 M.J. 207 (C.A.A.F. 2014). Gaskill pleaded guilty, admitted that he stole money from the service members when he used their debit cards, and this court affirmed those convictions. *Id.* On consideration of a petition for grant of review, CAAF noted that the proper victim was the merchant, "not the debit cardholder/Soldier." *Gaskill*, 73 M.J. 207. Consequently, CAAF set aside the relevant findings of guilty. *Id.*

For purposes of our review in this case, we have difficulty reconciling *Gaskill* with *Lubasky* or *Cimball Sharpton*.

First, appellant argues the result in *Gaskill* was mandated by the holding in *Lubasky*, because the reasoning in *Lubasky* is limited to only those cases where one exceeds some authority but completely inapplicable to those cases where one has no authority at all. This cannot be true. One who confers no authority whatsoever upon another to use his money but is nevertheless cheated out of a certain amount is no less a victim than one who confers limited authority on another to use his money but is nevertheless cheated by excess usage. As illustration, Victim A does not consent to Thief taking any money out of his wallet, but Thief steals $100. Victim B gives Thief permission to take $10 out of his wallet, but Thief instead takes $110. In both cases, the victims are out the same amount and suffer the same financial loss due to a betrayal of trust. In the current case, regardless of whether appellant obtained SPC DT's money through taking, trick, or false pretenses, appellant stole funds from SPC DT. *See United States v. Antonelli*, 35 M.J. 122 (C.M.A. 1992).

A logical construction concluding that one who gives some permission is a victim whereas one who gives no permission is not a victim is premised upon a shaky foundation.

Second, appellant argues SPC DT cannot be a proper victim because he ultimately suffered no financial loss in that his bank reimbursed him "for the *money* that was taken." (emphasis added). We reject any notion that insurance coverage, indemnity clauses, reimbursement from any source, or contractually provided fraud protection somehow precludes one whose property is stolen from being properly and legally considered a "victim" of larceny, an instantaneous offense. To rule otherwise would allow a thief, once his crime is discovered, to simply reimburse any and all alleged victims of his theft and thereby immunize himself from conviction due to the fact that nobody has experienced an enduring financial loss. This is not the law.

Certainly, whether a victim is made whole, stolen property is returned, or reimbursement is paid are matters in mitigation, but these factors are not wholly

4

determinative of whether or not a larceny occurred in the first place and who was the initial victim of that larceny.[2]  For example, if one is defrauded out of funds but then made whole either through insurance or fraud protection, it does not follow that the person was not victimized.  The rejection of the idea that after-the-fact reimbursement does not conclusively identify the victim in no way contradicts *Cimball Sharpton*.  In *Cimball Sharpton*, the Air Force was obligated to pay, did pay, and its stolen funds were used to obtain goods.  73 M.J. at 300-01.  Therefore, the Air Force was a proper victim.  Here, SPC DT's money was stolen and those stolen funds were used by appellant to obtain goods.  Therefore, SPC DT is a proper victim.

*Larceny of a Value Over $500.00*

Appellant avers that the military judge abused his discretion by accepting appellant's guilty plea to larceny on divers occasions of money of a value of about $1,000.00, because it was never established that appellant stole more than $101.00 at any one time.  The government concedes "the military judge erred in aggregating the value of appellant's thefts" and we accept the concession.  *See United States v. Harding*, 61 M.J. 526 (Army Ct. Crim. App. 2005); *United States v. Christensen*, 45 M.J. 617, 619 (Army Ct. Crim. App. 1997); *MCM*, 2012 ed., pt. IV, ¶ 46.c(1)(h)(ii).

The maximum punishment for this specification should have been that for a larceny of property of a value of $500.00 or less instead of the greater maximum punishment for larceny of property of a value of more than $500.00.  We adhere to the principle that when multiple, separate larcenies (not involving bad checks) are charged in a single, duplicitous specification, the maximum punishment for that specification is determined by the single largest theft alleged within that specification.  *United States v. Fulton*, ARMY 20120432, 2013 CCA LEXIS 515 (Army Ct. Crim. App. 27 June 2013) (mem. op.), *pet. denied*, 73 M.J. 58 (2013); *United States v. Rupert*, 25 M.J. 531 (A.C.M.R. 1987).  We believe extending *United States v. Mincey*, 42 M.J. 376 (C.A.A.F. 1995), beyond bad check offenses is fraught with concerns and unintended consequences.  *Contra United States v. Campbell*, 72 M.J. 671 (N.M. Ct. Crim. App. 2013), *pet. denied*, 73 M.J. 139 (2013); *United States v. Oliver*, 43 M.J. 668 (A.F. Ct. Crim. App. 1995), *pet. denied*, 43 M.J. 362 (1995).

Appellant requests and the government agrees that this court should amend and affirm the findings of guilty of larceny.  We will do so in such a manner as to appropriately reflect that appellant was only subject to the lesser maximum

---

[2] We need not decide here how a financial institution's rights of subrogation with respect to its cardholders may qualify that institution as a proper victim.  Suffice it to say that an owner, and by logical extension a victim, is *any* entity with a greater right to possession of the purloined property than the thief.

punishment applicable to larceny of property of some value while still accurately reflecting appellant's level of criminality and its recurring nature. *See Harding*, 61 M.J. 526.

## CONCLUSION

The court amends and AFFIRMS only so much of the finding of guilty of The Specification of The Charge as finds that:

> The Specification:  In that Private (E2) Alvin C. Endsley, U.S. Army, did, at or near Fort Riley, Kansas, on divers occasions between on or about 22 May 2012 and on or about 25 July 2012, steal money, each theft of a value of less than $500.00 with the value of the multiple thefts totaling about $1,000.00, the property of Specialist D.V.T.

The remaining findings of guilty are AFFIRMED.

We are able to reassess the sentence on the basis of the error noted and do so after conducting a thorough analysis of the totality of the circumstances presented by appellant's case and in accordance with the principles articulated by our superior court in *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013), and *United States v. Sales*, 22 M.J. 305 (C.M.A. 1986).  In evaluating the *Winckelmann* factors, we first find no dramatic change in the penalty landscape or exposure which might cause us pause in reassessing appellant's sentence.  Although the military judge may have miscalculated the maximum sentence for the larceny specification, appellant was subject to the jurisdictional limit of a special court-martial regardless of the value of the stolen property due to his contemporaneous drug conviction. *See* Rule for Courts-Martial 201(f)(2)(B)(i); *MCM*, 2012, pt. IV, ¶ 46.e(1)(b), (d), and ¶ 38.e(1)(b).  Second, appellant was sentenced by a military judge alone.  Third, the nature of the amended larceny offense still captures the gravamen of the specification of which appellant was convicted.  Finally, based on our experience, we are familiar with the remaining offenses so that we may reliably determine what sentence would have been imposed at trial.

After reassessing the sentence and the entire record, we AFFIRM the approved sentence.  We find this purges the error in accordance with *Sales* and *Winckelmann* and is also appropriate under Article 66(c), UCMJ.  All rights, privileges, and property, of which appellant has been deprived by virtue of that portion of the findings set aside by this decision, are ordered restored.

Senior Judge COOK and Judge TELLITOCCI concur.

ENDSLEY—ARMY 20130052



FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court