# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
HAIGHT, PENLAND, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Private First Class RICHARD T. MANRIQUEZ**
**United States Army, Appellant**

ARMY 20140893

Headquarters, Joint Readiness Training Center and Fort Polk
Randall Fluke, Military Judge
Colonel Jan E. Aldykiewicz, Staff Judge Advocate

For Appellant: Captain Payum Doroodian, JA (argued); Lieutenant Colonel Charles D. Lozano, JA; Major Christopher D. Coleman, JA; Captain J. David Hammond, JA (on brief).

For Appellee: Major Anne C. Hsieh, JA (argued); Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Major Anne C. Hsieh, JA (on brief).

20 May 2016

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

WOLFE, Judge:

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of desertion terminated by apprehension and one specification of larceny of $2,600, in violation of Articles 85 and 121, Uniform Code of Military Justice, 10 U.S.C. §§ 885 and 921 (2012) [hereinafter UCMJ]. The court-martial sentenced appellant to a bad-conduct discharge, confinement for eighteen months, forfeiture of all pay and allowances, and reduction to the grade of E-1. The convening authority approved the sentence as adjudged and credited appellant with four days of pretrial confinement.[1] This case was referred to

---

[1] A pretrial agreement limited confinement to eighteen months, with a provision that the convening authority would disapprove any adjudged confinement in excess of

(continued . . .)

MANRIQUEZ – ARMY 20140893

us for review under Article 66(b), UCMJ.  Appellant assigns two errors, both of which merit discussion.[2]

## BACKGROUND

Appellant arrived at Fort Polk, Louisiana on 30 May 2013.  On 30 October 2013, appellant packed his belongings and deserted his unit.  He did not intend to return to the Army.  On 30 November 2013, the Army issued a deserter warrant for appellant.

In August of 2014, while still in a deserter status, appellant got a job as a cashier at a Wal-Mart in Pineville, Louisiana.  From 23-25 September 2014, while serving as a cashier, appellant illicitly activated $2,600 worth of Wal-Mart gift cards and took them out of the store.  He subsequently used the gift cards to buy merchandise at Wal-Mart.  Wal-Mart detected the theft and notified the Pineville Police Department, who arrested appellant.  On 29 September 2014, the Pineville Police Department returned appellant to military control pursuant to the deserter warrant.

## LAW AND DISCUSSION

Appellant raises two assignments of error, both calling into question the providency of his guilty plea to stealing gift cards from Wal-Mart.  Specifically, appellant pleaded guilty to a specification that he:

> [D]id, at or near Pineville, Louisiana, between on or about
> 23 September 2014 and on or about 25 September 2014,
> steal Wal-Mart gift cards, of a value of about $2,600.00,
> the property of Wal-Mart.

During the providence inquiry, appellant described his conduct as follows:

---

(. . . continued)
twelve months if appellant made restitution to the larceny victim (Wal-Mart) before the convening authority's action on the case.  As appellant failed to make restitution, the convening authority approved the sentence as adjudged.

[2] Appellant personally claims, pursuant to *United States v. Grostefon*, 12 M.J. 431 (C.M.A. 1982), that his sentence was disproportionately severe based on the circumstances of his case and as compared to other persons he has met while in confinement.  We find the sentence to be appropriate.

2

On August 12th, 2014, I applied for a job at the Wal-Mart located in Pineville, Louisiana. I was hired as a full-time cashier on August 25th, 2014. . . . [B]eginning on September 23d [2014] . . . . I began activating store gift cards by using my cash register to place money on the cards. I did not pay for the cards, nor did any store customers pay for the cards. I wrongfully took gift cards belonging to Wal-Mart and used my cash register to place money belonging to Wal-Mart on these cards. The funds used to place value on the gift cards did not belong to myself or any customer. The funds used to place value on the gift cards belonged to Wal-Mart.

Before I was apprehended by civilian law enforcement for this offense, I had placed $2,600.00 worth of money using my cash register to activate these cards. I intended to permanently deprive Wal-Mart of the use and benefit of the money placed on these gift cards after activating these cards by placing store funds on the cards. I used these cards to purchase food, clothing, and other items from the store for myself and my family members.

In the stipulation of fact, appellant agreed that on 23 September 2014, he "methodically selected Wal-Mart gift cards worth $200.00 from under his register, activated the cards without paying for them, and placed them into his pocket." He further agreed that on 25 September 2014, "he methodically selected six additional cards and activated them without paying for them." Appellant stipulated that on the two separate days he stole "$2,600.00 worth of gift cards."

*A. What is the Value of a Gift Card?*

We review a military judge's decision to accept a plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "It is an abuse of discretion for a military judge to accept a guilty plea without an adequate factual basis to support it . . . [or] if the ruling is based on an erroneous view of the law." *United States v. Weeks*, 71 M.J. 44, 46 (C.A.A.F. 2012) (citation omitted).

In his first assignment of error, appellant asserts that the military judge abused his discretion in accepting appellant's guilty plea because gift cards have no "tangible value" other than the value of the "plastic card."

In short, appellant asks us to treat a gift card in a manner similar to a debit, credit, or access device. Under this theory, when appellant activated and took the gift cards—or, in his words, "placed money" on the gift cards—he had only engaged

in the theft of a piece of plastic of negligible value. Accordingly, the substantial theft only occurred when appellant used the gift cards to acquire goods from Wal-Mart. As neither the providence inquiry nor the stipulation of fact adequately related the value of the goods appellant purchased with the gift cards, this reasoning would require us to set aside the finding of guilty as to larceny, at least in part.

Appellant's argument is not without merit. Gift cards share some of the characteristics of debit or credit cards. The President has specified that "[w]rongfully engaging in a credit, debit, or electronic transaction to obtain goods or money is an obtaining-type larceny by false pretense . . . usually . . . from the merchant offering them." *Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], pt. IV, ¶ 46.c.(1)(i), (iv); *United States v. Williams*, 75 M.J. 129, 132 (C.A.A.F. 2016) ("[T]ypically, when larceny is by means of a wrongful credit or debit transaction, the money or goods were wrongfully obtained *from* the merchant or bank, making them the person stolen from."); *United States v. Cimball Sharpton*, 73 M.J. 299, 301 (C.A.A.F. 2014); *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010).[3] Accordingly, if we were to treat a gift card and debit card similarly, the substantial theft occurs not when the card is taken, but when the card is used.

However, at least in the context of a guilty plea, we decline to adopt appellant's view of these offenses.

First, gift cards are unlike debit and credit cards in that they do not require any deception to use. Credit and debit cards are issued to persons with unique account numbers associated with the card and the particular account holder. The unauthorized use of a credit or debit card requires that (to some greater or lesser extent) the user falsely represent he has the authority to use the card. This is why such crimes are usually an "obtaining" type larceny by "false pretenses." Gift cards,

---

[3] We note that this case presents entirely different issues than those presented in *Williams*, *Lubasky*, and *Cimball Sharpton*. On appeal, those cases answered the question of "whom did the accused steal the goods or money from?" *Williams*, 75 M.J. at 132. As a larceny specification needs to place an accused on notice of what he is defending against, a broad reading of these cases is that the specification needs to allege the person or entity with whom the accused interacted. For a taking offense, this is usually the person from whose possession or control the accused removed the property, even if the property is ultimately owned by someone else. For an obtaining-type offense, which involves theft by deception, this is usually the entity that the accused initially deceived (e.g., by holding himself out as an authorized user of the card). However, in this case those concerns are not present, as appellant interacted at every stage solely with Wal-Mart.

similar to gift certificates and coupons, may be used by the bearer without any representation. In other words, "false pretenses" are not required to use a stolen gift card. Use of a stolen gift card requires no more deception or false representation than the use of stolen cash, a stolen gift certificate, or a stolen baseball ticket. Accordingly, we view this case as a theft by "taking" not "obtaining."

Second, it is clear that the illicitly actived gift cards that appellant removed from Wal-Mart had "value" greater than that of a piece of plastic. "Value is a question of *fact* to be determined on the basis of all the evidence admitted." *MCM*, pt. IV, ¶ 46.c.(1)(g)(i) (emphasis added). Here, as this was a guilty plea, we need not look further than appellant's own admissions that he "placed $2600.00 worth of money" on the gift cards and then "stole $2600.00 worth of gift cards." When appellant argues in his brief that he "did not 'place money' or 'store funds' on the gift cards," he is disagreeing with *facts* that *he admitted* at trial. *United States v. Johnson*, 42 M.J. 443, 445 (C.A.A.F. 1995) (it is appropriate to reject facts asserted on appeal that contradict an appellant's admissions during a guilty plea). More broadly, it is clear that activated gift cards have a "market value" that is greater than the cost of the plastic used to make the card. *See, e.g., MCM,* pt. IV, ¶ 46.c.(1)(g)(iii) (the value of stolen property is determined by market value). An activated gift card, like a movie ticket, sports ticket, or lottery ticket, is an object with value. *Id.* ("Writings representing value may be considered to have the value—even though contingent—which they represented at the time of theft").

Third, our sister courts that have addressed this issue have either directly or indirectly found that gift cards possess a value beyond their weight in plastic. In *United States v. Perrine*, ACM S31972, 2013 CCA LEXIS 234, at *9-11 (A.F. Ct. Crim. App. 18 Mar. 2013) (unpublished), *review denied*, 72 M.J. 442 (C.A.A.F. 2013), the Air Force Court of Criminal Appeals specifically rejected the idea that a gift card "cannot be stolen because it is 'intangible' and not 'capable of being possessed.'" Under facts that presented identical issues of law in appellant's case, the *Perrine* court found that "appellant did take possession of 'tangible property' that had value . . . [when] [h]e walked away from the AAFES customer service counter carrying a gift card . . . ." *Id.*

While *Perrine* is the only case that specifically addresses the value of gift cards, other courts have assumed as much. *See United States v. Murphy*, NMCCA 201300100, 2013 CCA LEXIS 1049 (N.M. Ct. Crim. App. 29 Oct. 2013) (unpublished) (affirming conviction for theft of a gift card); *United States v. Gordon*, ACM S32008, 2013 CCA LEXIS 675 (A.F. Ct. Crim. App. 26 Jun. 2013) (unpublished) (affirming conviction for gift card theft). Indeed, in *Cimball Sharpton,* our superior court summarized the investigation as "reveal[ing] that the appellant used her [Government Purchase Card] to make about $20,000 in unauthorized purchases, mostly gift cards." 73 M.J. at 779. In all of these cases it

is clear that the courts view the accused as having taken or obtained something valued far in excess of a piece of plastic.[4]

Appellant's admissions that he placed money on the gift cards and then took $2600 worth of gift cards (with the intent to permanently deprive Wal-Mart of their value) was sufficient to establish the providency of his plea to larceny.

## B. *Duplicitous Pleading*

Appellant's second assignment of error alleges that two larcenies were improperly aggregated into a single larceny of $2,600.00. Appellant correctly notes that he stole gift cards on two separate days. However, we nonetheless do not believe appellant is entitled to relief for two independent reasons.

First, appellant forfeited this issue by failing to raise it at trial, and any error does not amount to plain error. Furthermore, by pleading guilty, the appellant *waived* this issue. *United States v. Schweitzer*, 68 M.J. 133, 136 (C.A.A.F. 2009) ("An unconditional guilty plea generally 'waives all defects which are neither jurisdictional nor a deprivation of due process of law.'") (quoting *United States v. Rehorn*, 9 U.S.C.M.A. 487, 488-89, 26 C.M.R. 267, 268-69 (1958)). As this waiver was part of a negotiated pretrial agreement, we see no basis to exercise our "highly discretionary power" to notice forfeited and waived error. *United States v. Butcher*, 56 M.J. 87, 93 (C.A.A.F. 2001).

Second, as appellant claims that the specification alleges two separate larcenies, the appropriate remedy at trial for a duplicitous specification would have been severance. *See* Rule for Courts-Martial 906(b)(5) ("Severance of a duplicitous specification into two or more specifications"). Although not as clear as might be preferred, the stipulation of fact indicates that appellant took thirteen $200 gift cards totaling $2,600.00. Appellant stipulated that he took six cards on the second day. Thus, it appears that severance would have resulted in two specifications of larceny,

---

[4] Although not presented here appellant's view of the law would be problematic in other circumstances. Consider, for example, an accused who takes a gift card from another individual and intentionally destroys the card, preventing its use by the owner. In such a case no goods are ever obtained from the use of the card. Under appellant's view of the law, only a piece of plastic was stolen, even in circumstances where the owner has suffered an unrecoverable loss of the gift card's face value.

each alleging a theft of over $500.00.[5]  Accordingly, we find appellant has suffered no prejudice from being charged with a single specification of larceny.

## CONCLUSION

Having found no substantial basis in law or fact to question appellant's pleas, and finding the sentence appropriate, the findings and sentence as adjudged and approved by the convening authority are AFFIRMED.

Senior Judge HAIGHT and Judge PENLAND concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[5] This case is therefore distinguishable from *United States v. Harding*, 61 M.J. 526 (Army Ct. Crim. App. 2005).  In that case, the government combined several larcenies over several weeks and months in order to exceed the $100 (now $500) threshold for the increased maximum punishment for larceny.  Here, appellant stole multiple gift cards worth an aggregate value of more than $500 on at least one of the days alleged.  The reasonable inference from the stipulation of fact is that he stole more than $500 on both days alleged.  In either case, we fail to find prejudice to a substantial right of appellant.  *See* UCMJ art. 59(a).