# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and WOLFE
Appellate Military Judges

**UNITED STATES, Appellee**
**v.**
**Sergeant RANDY L. SIMPSON, JR.**
**United States Army, Appellant**

ARMY 20140126

Headquarters, I Corps
Jeffery D. Lippert and David L. Conn, Military Judges
Lieutenant Colonel Christopher A. Kennebeck, Staff Judge Advocate

For Appellant: Lieutenant Colonel Charles D. Lozano, JA; Major Aaron R. Inkenbrandt, JA; Captain Ryan T. Yoder, JA (on brief); Colonel Mary J. Bradley, JA; Major Christopher D. Coleman, JA; Captain Ryan T. Yoder, JA (on petition for grant of review to the Court of Appeals for the Armed Forces).

For Appellee: Colonel Mark H. Sydenham, JA; Major Steven J. Collins, JA; Captain Tara E. O'Brien, JA (on brief).

1 March 2017

---------------------------------------------------
MEMORANDUM OPINION ON REMAND
---------------------------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

MULLIGAN, Senior Judge:

On 10 June 2016 the Court of Appeals for the Armed Forces (CAAF) remanded this case for consideration of whether the proper victim of a larceny was charged in this case. *United States v. Simpson*, 75 M.J. 371 (C.A.A.F. 2016) (order). This case is one of several arising out of thefts from an account operated by the Credit First National Association (CFNA). The impropriety first came to light when a local utility company noticed that 324 customer bills were being paid from the same CFNA corporate account operated by JPMorgan Chase. The Army Air Force Exchange Service (AAFES) also noticed that a large number of AAFES Military Star Card accounts were being paid by the CFNA account.

Here, as with the other cases, the government charged CFNA as the victim. *United States v. Tauaese*, ARMY 20120176, 2014 CCA LEXIS 35 (Army Ct. Crim. App. 30 Jan. 2014) (sum. disp.) (affirming conviction and finding CFNA was proper victim), *pet. denied* 73 M.J. 418 (C.A.A.F. 2014); *see United States v. Poggioli*, ARMY 20110656, 2013 CCA LEXIS 551 (Army Ct. Crim. App. 1 July 2013) (mem. op.) (reversing guilty plea for inconsistencies in stipulation of fact and in the inquiry conducted pursuant to *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969)); *see also United States v. Thompson*, ARMY 20111176, 2013 CCA LEXIS 1054 (Army Ct. Crim. App. 19 Dec. 2013).

## BACKGROUND

The government initially charged appellant with forty-three specifications of larceny, one specification of conspiracy to commit larceny, and one specification of violating 18 U.S.C. § 1344. As part of a pretrial agreement, the parties agreed appellant would plead guilty to a single specification of larceny (on divers occasions) and a single specification of conspiracy to commit larceny.

The parties stipulated to the general facts of the case. The account in question was unusual. Although CFNA is a financial institution, the account was with the bank JPMorgan Chase—as CFNA had a corporate account at JPMorgan Chase. In a typical month, CFNA would execute over 17,000 transactions from the account, totaling about $15,000,000. The parties stipulated that the account was a "zero balance account" which meant that every day CFNA would wire transfer funds into the account in order to cover the withdrawals.

Appellant's girlfriend, Ms. Jannie Lee, had obtained the information necessary to set up automatic clearing house (ACH) transfers out of the CFNA account. These transfers are normally set up electronically over the internet or a phone system. Ms. Lee would set up a transaction to transfer money from the CFNA account to accounts operated by appellant, other soldiers, and individuals. In most cases, the transfers paid off outstanding debts (such as car payments, credit card bills and utility bills). Ms. Lee would often collect a fifty percent fee from the individual who benefited from the transfer. The parties stipulated that appellant personally benefited to the amount of $30,936.23.

The key to understanding the issue presented on remand is understanding *how* Ms. Lee went about transferring the money. Appellant stipulated that he would give her the account information that he wanted the money transferred into (for example to pay a credit card bill). Ms. Lee would then contact the credit card company (either online or by phone) and give them the information necessary for the credit card company to pull money out of the CFNA account at JPMorgan Chase. The ACH transactions were executed without human approval or intervention.

In other words, Ms. Lee did not interact with either CFNA or JP Morgan Chase. Instead, she deceived through false pretenses the beneficiary of the transfer (e.g., a credit card company) into requesting a transfer from the CFNA account at JPMorgan Chase.

## DISCUSSION

*A. JPMorgan Chase, not CFNA, Was the Proper Victim in this Case.*

This case, as well as the related cases listed above, represent a microcosm of larceny cases involving electronic thefts and the government's continuing problem of charging these cases correctly.

> Wrongfully engaging in a . . . electronic transaction to obtain . . . money is an obtaining-type larceny by false pretenses. . . . Such use to obtain money . . . is usually a larceny of money from the entity presenting the money . . . .

*Manual for Courts-Martial, United States* (2012 ed.) [hereinafter *MCM*], Part, IV para. 46c(1)(i)(vi). As JPMorgan Chase executed the ACH transfer, JPMorgan Chase was the correct victim in this case.[1] This holding is consistent, and directed by, how our superior court has treated the victim in larceny by obtaining cases. *See United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010); *United States v. Williams*, 75 M.J. 129 (C.A.A.F. 2016); *United States v. Sharpton*, 73 M.J. 299 (C.A.A.F. 2014). While we follow the binding precedence of our superior court here, one issue gives us pause that warrants some discussion.

*B. The Supreme Court's Decision in Shaw v. United States*

In a recent case the Supreme Court discussed who has a possessory interest in a bank account. *Shaw v. United States*, 137 S. Ct. 462 (2016). In *Shaw*, the issue was the flipside of appellant's argument in our case—whether the *bank* had a possessory interest in an account used by an individual.

In answering the question, the Court appeared to say that *both* the bank *and* the account holder have possessory interests in the account. "The basic flaw in [appellant's] argument lies in the fact that the bank, *too*, had property rights in [the victim's] bank account." *Id.* At 466 (emphasis added). While the Court went on to say that "the bank ordinarily becomes the owner of the funds" in the account, they

---

[1] We acknowledge that this court came to the opposite conclusion on the same facts and addressing the same issue in *United States v. Tauaese*, 2014 CCA LEXIS 35 (Army Ct. Crim. App. 30 Jan. 2014) (sum. disp.), *pet. denied* 73 M.J. 418 (C.A.A.F. 2014).

indicated the customer retains a property interest in the funds because "the customer retains the right, for example, to withdraw funds." *Id.* at 464, 466.

Citing treatise, the Court noted that depending on the contractual relationship between the bank and the individual, the customer could "retain ownership of the funds and the bank merely assumes possession." *Id. at 466* (*citing* 5A Michie, Banks and Banking, ch. 9, §38, at 162). In short, whether as an owner or as a bailee, depending on the contractual relationship, the bank, the customer, or both could have possessory interests in the account.

The *Shaw* Court went further, stating that being "deprived of its right" to use property, even if temporary and later reimbursed, is "sufficient." *Id.* at 467 ("It is consequently not surprising that, when interpreting the analogous mail fraud statute, we have held it 'sufficient' that the victim (here, the bank) be 'deprived of its right] to use of the property, even if it ultimately did not suffer unreimbursed loss," citing *Carpenter v. United States*, 484 U.S. 19 26-27 (1987)).

In other words, *Shaw* indicates that both the bank and the customer may have a possessory interest in an account, and that the loss of the right to access funds in an account is "sufficient" to create property in an account.

### C. Is Possessory Interest in an Account a Question of Fact?

To the extent that *Shaw* appears to say that ownership of an account is a question of fact, determined by the precise nature of a contractual agreement, in a contested case this question could be litigated. By contrast, in a guilty plea such as the one before us, when the accused states and stipulates that CFNA was the owner of the funds in the account, and that admission was not contradicted in a manner that would call into question the providence of his plea, his guilty plea would end the matter.

Here, there may be a factual basis to believe that CFNA had a possessory interest in the funds in the account. The parties stipulated to the nature of the account as follows:

> CFNA's account was not a conventional checking account. Instead, it was a zero-balance account in which the account was funded by wire transfer each business day to pay the amounts drawn on the account. The daily wire transfer effectively zeroed out the account every day.

The parties further stipulated that after the fraud was discovered, CFNA asked JPMorgan Chase to reverse the fraudulent transactions that had occurred in the last

sixty days. In the end, all of the thefts that occurred after 1 January 2010 were reversed.

A possible inference from these facts is that CFNA's contractual relationship with JPMorgan Chase included a possessory interest in the funds in the account. The opposite inference is also possible. Whether CFNA was a proper victim in the case would appear to turn on this issue.

However, against this backdrop, our superior court has repeatedly stated that the question of who has a possessory interest in an account is essentially a question of law. *Williams,* 75 M.J. at 132 (testing for *legal sufficiency* and finding that the "goods or money at issue belong to the merchant or bank" as a matter of law, not fact).

In *Williams*, for example, even the *unrecovered* loss of seventy dollars from overdraft fees in a customer's account caused by appellant's theft and the temporary loss of access to $755.10 in the account, when viewing the evidence in the light most favorable to the prosecution, did not create a permissible inference that the account holder had a possessory interest in the funds in the account. *Id.* at 131; *United States v. Williams*, 2014 CCA LEXIS 665 (Army Ct. Crim. App. 28 Aug. 2014) (mem. op.). Moreover, this determination was not made by reference to the facts adduced at trial (i.e., the actual contractual account agreement), but by the nature of accounts as a matter of law. *Williams*, 75 M.J. at 133.

Accordingly, we find we are bound to follow our superior court's view of the law on this issue. While the Supreme Court's decision in *Shaw* is persuasive, it interprets a different statute.[2] In the context of *Shaw* (where appellant was arguing that the *bank* did not have a possessory interest in the account), the Court's suggestion that both the customer and the bank have a possessory interest in the account is dicta.

Thus, while we might suggest revisiting the matter, we follow what we view to be the CAAF's clear holdings in this line of cases. If the permanent and temporary loss of access to funds in *Williams* did not create a possessory interest in

---

[2] The CAAF in *Williams* relied on *Burton v. United States*, 196 U.S. 283 (1905), for the proposition that the money in question belonged to the bank, not the account holder. *Williams,* 75 M.J. at 132. The Supreme Court's opinion in *Shaw* did not address their 111 year-old decision in *Burton.* As the Court's decision in *Shaw* is not precisely on point, in our position as the lower court, we leave it to the CAAF to determine whether *Shaw* implicitly rejected the language in *Burton* that the CAAF relied on to reach their holding in *Williams*. We note that when the CAAF remanded this case for us to reconsider in light of *Williams*, the Supreme Court had not yet decided *Shaw*.

those funds, then that same logic must apply here. As a matter of law, CFNA had no possessory interest in the funds maintained in their account at JPMorgan Chase.

### D. If the Government's Charges Use the Incorrect Victim, the Specification is Legally Insufficient.

The CAAF has stated that charging the proper victim in the case is a question of the legal sufficiency of the evidence. *Id.* Appellant admitted the funds he stole belonged to CFNA. As discussed above, JPMorgan Chase was the proper victim. And, as we interpret our superior court as stating this issue is essentially one of law, appellant's admission that CFNA was the owner of the funds is clearly erroneous and must be rejected. If looking at the evidence in a light *most favorable to the government* did not allow for a reasonable inference in *Williams* that the account holders were victims, then appellant's admission that CFNA owned the funds in the account here was erroneous.

This case, however, is a guilty plea. To be entitled to relief, appellant faces an *easier* burden that the appellant faced in *Williams*.[3] Appellant need not convince us that his admission that CFNA owned the funds was clearly erroneous as a matter of law. We need only find that there is a substantial basis in law or fact to question the providence of his plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). As JPMorgan Chase was the proper victim in this case, we have a substantial basis in both fact and law to question the providence of appellant's plea.

## CONCLUSION

The findings of guilty and the sentence are set aside. A rehearing may be ordered by the same or a different convening authority.

Judge WOLFE concurs.

Judge FEBBO, dissenting:

I respectfully dissent.

Based on the unique account in this case, I would find that charges properly identified CFNA as the entity appellant stole from, and conspired to steal from, and the military judge properly conducted appellant's providence inquiry.

Appellant stole and conspired to steal over $50,000 from CFNA over thirteen months. The original charges consisted of forty-three specifications of larceny, a

---

[3] Technically, absent waiver or forfeiture, appellant faces no "burden" during direct appeal as our review of his court-martial is de novo. UCMJ art. 66(c).

conspiracy charge, and a charge under Article 134, UCMJ (bank fraud). As part of his pretrial agreement, the convening authority accepted appellant's offer to plead guilty to a single specification of two charges to larceny and conspiracy. The military judge sentenced appellant to a bad-conduct discharge, confinement for two months, and reduction to E-4. We have created a Rubik's Cube from appellant's guilty plea. It should not be this hard for a soldier to plead guilty to a single specification of larceny and conspiracy to steal over $500 from CFNA.

I read *United States v. Williams* more narrowly than the majority. 75 M.J. 129 (C.A.A.F. 2016). *Williams* is distinguishable from the facts of this case since the larceny here was from a "zero balance account." CFNA's "zero balance account" with JPMorgan Chase was not a conventional account and was the exception to the normal rule that larceny of money is from the entity presenting the money. *MCM*, Part IV, ¶ 46(c)(i)-(vi). "Alternative charging theories are also available," as long as "the accused wrongfully obtained goods or money" *from* someone "with a superior possessory interest." *MCM*, Drafters' Analysis, app. 23, ¶ 46(c) at A23-17 (2012 ed.). "The relevant question in determining the person to name in a larceny specification is *whom* did the accused steal the goods or money *from*?" *Williams*, 75 M.J. at 132.

As part of the pretrial agreement, appellant and the government stipulated that CFNA was "not a conventional" bank and CFNA's "zero balance account" was "not a conventional checking account." CFNA agreed to fund all wire transfers each business day to pay JPMorgan Chase all amounts drawn on the account. CFNA's "daily wire effectively zeroed out the account every day." As explained in *First Federal of Michigan v. Barrow*, 878 F.2d 912, 914 n.2 (6th Cir. 1989), "zero balance accounts are open accounts without cash balances to maximize the viability of idle investment by affording a system of automatic inter-account fund transfers from a central account to subsidiary accounts on an 'as needed' basis." *Id.* In other words, CFNA's central account at JPMorgan Chase automatically transferred funds to CFNA's zero balance account to cover all withdrawals for the day.

Unlike *Williams*, CFNA suffered more than a "consequence—such as a bank fee or loss of access to funds in the account." *Williams*, 75 M.J. at 132. The appellant here obtained the money *from* CFNA. Unlike the situation when an appellant used another person's credit card to commit a larceny from a bank ATM, bank teller, or merchant, appellant and his co-conspirator had no interaction with JPMorgan Chase other than an ACH transfer from CFNA's zero balance account. Unlike *Williams*, appellant did not pretend to be CFNA to steal from JPMorgan Chase. Appellant pretended to be an authorized CFNA vendor or merchant to steal from CFNA. In appellant's providence inquiry, appellant stated he did not initially know about CFNA. Appellant learned about the fraudulent scheme involving CFNA

7

around April 2010.[1] Appellant misrepresented that he was the lawful owner of the CFNA account and wrongfully used CFNA's account number and routing number. Appellant asserts the inquiry under *United States v. Care*, 18 C.M.A. 535, 40 C.M.R. 247 (1969), was insufficient since he did not know the owner of the money when he entered into agreement to steal from CFNA. At the same time, from the record, appellant would not have had knowledge of JPMorgan Chase until well after the larcenies and conspiracy, after the thefts were investigated, and he stood charged with a crime. Again, the unusual zero balance account in this case required an alternative charging theory. Because funds were not stolen from JPMorgan Chase and the object of appellant's conspiracy to steal was not JP Morgan, CFNA was properly listed as the entity appellant stole *from*.

In addition to the daily requirement to zero out the balance of CFNA's account, the conclusion the funds were stolen from CFNA is further supported by the stipulation of fact and providence inquiry that JPMorgan Chase did not reimburse CFNA for the stolen funds. Instead, JPMorgan Chase reversed the unauthorized charges between the vendors (such as utility companies and credit card companies) back to CFNA's zero balance account. Funds stolen before 1 January 2010 could not be reversed to reimburse CFNA for the loss.

In my opinion, appellant's larceny and conspiracy to commit larceny fall within the alternative charging theory available to the government to prove larceny from CFNA's zero balance account. *See United States v. Cimball Sharpton*, 73 M.J. 299, 301-02 (C.A.A.F. 2014). Applying the analysis of *Cimball Sharpton* to appellant's case, CFNA's financial agreement with JPMorgan Chase is similar to the United States Air Force's agreement with the bank issuing the government General Purchase Card (GPC). Like the Air Force, CFNA had an agreement with JPMorgan Chase to cover all charges to bring CFNA's account to a zero balance each day. Similar to *Cimball Sharpton*, the agreement between CFNA and JPMorgan Chase meant that JPMorgan Chase would honor any charges made either with apparent or actual authority, and any wrongful ACH transfers from CFNA's zero balance account would wrongfully induce payment from CFNA's central account every day. Although JPMorgan Chase was able to reverse ACH debits stolen from CFNA after 1

---

[1] Appellant avers that his providence inquiry was insufficient since the larceny specification included larceny and conspiracy to commit larceny before April 2010. The government originally charged appellant with forty-three specifications of larceny from CFNA over thirteen months totaling around $30,936. The government also charged appellant with conspiracy to commit larceny from CFNA and stipulated the larcenies were over $50,000. As part of his pre-trial agreement, the convening authority allowed the appellant to plead guilty to one specification of larceny from CFNA of a value over $500 and conspiracy to commit larceny from CFNA of a value over $500. The stipulation of fact established appellant stole tens of thousands of dollars after April 2010.

January 2010, it is "irrelevant for the purposes of a larceny" that CFNA was later repaid for the funds stolen. *Williams*, 75 M.J. at 133 (citing *Cimball Sharpton*, 73 M.J. at 301-02).

Although the record does not include the specific agreement between CFNA and JPMorgan Chase, as our superior court has stated "[w]e cannot lose sight that this is a guilty plea case" and that "a guilty plea case is less likely to have developed facts." *United States v. Barton*, 60 M.J. 62, 65 (C.A.A.F. 2004) (citation and internal quotation omitted). However, the stipulation of fact and the record, to include the appellant's providence inquiry, support the conclusion that CFNA reimbursed JPMorgan Chase on a daily basis for all amounts transferred from the zero balance account. CFNA's zero balance account had on average 17,000 transactions totaling $15,000,000 each month. On a daily basis, for each of these 17,000 transactions, CFNA covered all these charges and ensured the balance was at zero every day. Appellant's misconduct was not the usual larceny case from a typical bank account.

My concern with a one-charge-fits-all-larceny schemes is that it elevates the correct victim in larceny cases to a quasi-elemental status for charges. I would suggest that notice pleadings, due process analysis, and preventing double jeopardy are alternative methods of addressing alternative charging theories for larcenies. For example, the government can charge larceny in a case where the victim is unknown (e.g., when the accused is seen stealing the wallet from an unknown individual). If that is proper, then I would suggest that charging the "correct" victim is not a fixed question of law as the majority would hold. Any person with a superior interest in the properly could be a properly charged victim, even if they did not have the *greatest* property interest. The superior property interest between the owner of an account, credit-card or debit card, and a suspected thief is easily determined. I see these issues best addressed as ones of notice. Here, appellant's guilty plea obviates the issue of notice.

This case, where appellant acted through his girlfriend and in conspiracy with another soldier, and was three or four degrees removed from the actual victims (whether CFNA or JPMorgan Chase), illustrates the unworkable status of not recognizing alternative charging theories for complex larcenies executed over the internet. In our notice pleading jurisdiction, post-hoc appellate analysis of the contractual financial relationships between financial institutions, given the variation and complexity, should not be case dispositive. A perfect example of this point is the zero balance account between two financial institutions that processed thousands of transactions a month in this case. On appeal we address the complex relationship between these two financial institutions, a relationship that appellant did not understand, and did not need to understand to commit his crimes.

Nonetheless, applying *Williams* and *Cimball Sharpton*, I would find the larceny from a zero balance account holder is one of the exceptions to the

government's charging theory of larceny. As this court has held in prior similar zero balance account larceny cases, the larceny is *from* the account owner (in this case CFNA). I would affirm the findings and sentence.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court