*This opinion is subject to revision before publication*

# UNITED STATES COURT OF APPEALS
## FOR THE ARMED FORCES

———————————

**UNITED STATES**
Appellee

**v.**

**Henry L. Williams III, Specialist**
United States Army, Appellant

**No. 15-0140**
Crim. App. No. 20130284

Decided February 23, 2016

Military Judges: Tara A. Osborn and David H. Robertson

For Appellant: *Lieutenant Colonel Charles D. Lozano, Major Aaron R. Inkenbrandt, Captain J. David Hammond,* and *Captain Heather L. Tregle* (on brief); *Colonel Kevin Boyle, Major Amy E. Nieman,* and *Captain Michael J. Millios.*

For Appellee: *Major A. G. Courie III, Major Daniel D. Derner,* and *Captain Timothy C. Donahue* (on brief).

Judge RYAN delivered the opinion of the Court, in which Chief Judge ERDMANN, Judges STUCKY and OHLSON, and Senior Judge LAMBERTH, joined.

———————————

Judge RYAN delivered the opinion of the Court.[1]

Appellant was convicted, pursuant to his pleas, of failure to go to his appointed place of duty, disobedience of a superior commissioned officer, two specifications of disobedience of a noncommissioned officer, making a false official statement, wrongful use of marijuana, three specifications of larceny, two specifications of housebreaking, and bigamy in violation of Articles 86, 90, 91, 107, 112a, 121, 130, and 134, Uniform Code of Military

---

[1] Senior Judge Royce C. Lamberth, of the United States District Court for the District of Columbia, sat by designation, pursuant to Article 142(f), Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 942(f) (2012).

Justice (UCMJ), 10 U.S.C. §§ 886, 890, 891, 907, 912a, 921, 930, 934 (2006). Appellant was convicted, contrary to his pleas, of two specifications of larceny in violation of Article 121, UCMJ, and was sentenced to a bad-conduct discharge and confinement for eighteen months. Pursuant to a pretrial agreement, the convening authority approved only the bad-conduct discharge and fifteen months of confinement. The convening authority also credited Appellant with 123 days against the sentence.

The United States Army Court of Criminal Appeals (ACCA) affirmed the findings and sentence. We granted Appellant's petition to review the following issue:

> Whether Appellant committed larcenies of the property of two soldiers by using their debit card information without authority. *See United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010).

Contrary to the premise underlying the ACCA's holding, an Article 121, UCMJ, conviction does not turn on identifying the "victims," "impact," and "loss" as those terms are commonly used and employed. Rather, it requires, inter alia, that an appellant steal something *from* a person who owns it or has a greater possessory interest in it than the appellant. *Lubasky*, 68 M.J. at 263 (citing *Manual for Courts-Martial, United States*, Analysis of Punitive Articles app. 23 at A23–16 (2008 ed.) [hereinafter Drafters' Analysis]). As the Government concedes, Appellant did not steal anything *from* Private First Class (PFC) Irvine or Specialist (SPC) Aldrich. Appellant's convictions for Specifications 1 and 2 of Charge VI, Article 121, UCMJ, are set aside, and these specifications are dismissed.

## I. FACTS

Appellant lived with PFC Benjamin P. Irvine from December 2011 to February 2012 at Fort Bragg, North Carolina. In February 2012, a fraud agency notified PFC Irvine that there were suspicious purchases on his checking account with the Boulder Valley Credit Union (BVCU), including a charge from Verizon Wireless for $2,269.51, charges from various food vendors, and charges from the

online sex and dating website Adult FriendFinder.[2] The charges totaled $3,067.70. Appellant was listed as the purchaser of the food on a Pizza Hut receipt, and he later testified that he had written down PFC Irvine's debit card number and mistakenly used it to complete all of the purchases, except for the one to Verizon Wireless, which Appellant claimed his wife made. Once PFC Irvine notified BVCU of the fraudulent charges, BVCU provided PFC Irvine with provisional credit, but also charged him $33 in overdraft fees.

As a result of the above actions, Specification 1 of Charge VI, alleged:

> In that [Appellant], did, at or near Fort Bragg, North Carolina, on divers occasions, between on or about 26 December 2011 and on or about 4 February 2012, steal money, of a value of more than $500.00, the property of Private First Class (E-3) BI.

SPC John C. Aldrich worked with Appellant in the summer of 2011 while they were both stationed in Iraq at Contingency Operating Site Warrior. In July of that year, SPC Aldrich noticed two unauthorized charges on his checking account with BB&T Bank totaling $755.10. The charges were related to attempted equipment purchases from computergeeks.com. Computergeeks.com never shipped the computer equipment because it flagged the purchases as fraudulent.

---

[2] While we are reversing this specification on the ground that nothing was stolen from PFC Irvine, we clarify one point. To the extent that the Government's theory at trial involved theft of services, such as those that Appellant may have purchased from Verizon Wireless and the sex and dating website, these services are, unlike goods, not "tangible and capable of being possessed," *United States v. Mervine*, 26 M.J. 482, 483 (C.M.A. 1988), and thus not the proper object of larceny under Article 121, UCMJ. *Manual for Courts-Martial, United States* pt. IV, para. 78.c. (2012 ed.) (*MCM*) (contrasting the Article 134 offense of obtaining services under false pretenses with larceny and wrongful appropriation, which pertain to stealing money, personal property, or articles of value).

Appellant used SPC Aldrich's debit card information to attempt to make the above purchases without authority, though his defense was that his use was accidental. The computers were never shipped, but BB&T Bank charged him $70 in overdraft fees and put a hold on SPC Aldrich's account for $755.10, which caused SPC Aldrich to be unable to make his car payment on time.

Consequently, Specification 1 of Charge VI, related to the above actions, alleged:

> In that [Appellant], did, at or near Contingency Operating Site Warrior, Iraq, on divers occasions, between on or about 30 June 2011 and or about 7 July 2011, steal money, of a value of more than $500.00, the property of Specialist (E-4) JA.

At trial, Appellant moved under Rule for Courts-Martial (R.C.M.) 917 for a finding of not guilty due to insufficient evidence to sustain a larceny conviction. Citing this Court's decision in *Lubasky*, Appellant argued that PFC Irvine and SPC Aldrich were the "wrong victim[s]" of the larcenies, and that the merchants or the banks should have been named as the victims in the specifications. The military judge denied the motion.

## II. ACCA DECISION

On appeal, Appellant claimed, inter alia, that the evidence of his larceny convictions was legally insufficient because the two checking account holders, PFC Irvine and SPC Aldrich, were not the "correct victims." *United States v. Williams*, No. ACM 20130284, 2014 CCA LEXIS 665, at *11, 2014 WL 7228945, at *4 (A. Ct. Crim. App. Aug. 28, 2014) (unpublished). The ACCA held that the evidence was legally sufficient. 2014 CCA LEXIS 665, at *11–14, 2014 WL 7228945, at *4–5. Citing *MCM* pt. IV, para. 46.c.(1)(h)(vi), the ACCA recognized that larceny via the unauthorized use of another's debit card "is usually a larceny of those goods from the merchant offering them." *Williams*, 2014 CCA LEXIS 665, at *12, 2014 WL 7228945, at *4. It nonetheless determined that an alternative charging theory was appropriate in this case because PFC Irvine and SPC Aldrich were the "actual victims in this case. Appellant

caused the movement of [PFC Irvine's and SPC Aldrich's] money from their control, intending to permanently deprive them and actually depriving them of its use and benefit." 2014 CCA LEXIS 665, at \*13, 2014 WL 7228945, at \*5 (citing *United States v. Cimball Sharpton*, 73 M.J. 299 (C.A.A.F. 2014)).

### III. DISCUSSION

#### A.

"The test for legal sufficiency is whether, considering the evidence in the light most favorable to the prosecution, a reasonable factfinder could have found all the essential elements beyond a reasonable doubt." *Lubasky*, 68 M.J. at 263 (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). The elements of larceny are, in relevant part:

> (a) That the accused wrongfully took, obtained, or withheld certain property from the possession of the owner or of any other person;
>
> (b) That the property belonged to a certain person;
>
> …; and
>
> (d) That the taking … by the accused was with the intent permanently to deprive … another person of the use and benefit of the property ….

*MCM* pt. IV, para. 46.b.(1) (2012 ed.).[3]

As discussed at length in both *Lubasky* and *Cimball Sharpton*, Article 121, UCMJ, sought to consolidate the various means of stealing — by larceny, false pretense, and embezzlement — under the single rubric of "larceny." *Lubasky*, 68 M.J. at 263; *Cimball Sharpton*, 73 M.J. at 301; *MCM* pt. IV, para. 46.c.(1)(a). In one sense, then, "'the particular means of acquisition of the property became relatively unimportant.'" *Lubasky*, 68 M.J. at 263 (quoting *United States v. Aldridge*, 2 C.M.A. 330, 331–32, 8 C.M.R. 130, 131–32 (1953)). While this remains the case, the person stolen from is important, and it is evident to this Court that

---

[3] The relevant portions of the 2008 and 2012 editions of the *MCM* are identical.

charging authorities and lower courts continue to flounder and misstep when it comes to the elemental requirement "that the accused wrongfully obtain money or goods … *from* a person or entity with a superior possessory interest." *Id.* (emphasis added) (citing Drafters' Analysis app. 23 at A23-16 (2008 ed.)); *see, e.g., United States v. Gaskill*, 73 M.J. 207 (C.A.A.F. 2014) (per curiam) (summary disposition); *United States v. Endsley*, 74 M.J. 216 (C.A.A.F. 2015) (summary disposition).[4] The relevant question in determining the person[5] to name in a larceny specification is *whom* did the accused steal the goods or money *from*?

The *MCM* is instructive on this point. When an accused engages in a wrongful "credit [or] debit" transaction, she has "usually" stolen from the merchant offering the purchased goods or "the entity presenting the money." *MCM* pt. IV, para. 46.c.(1)(i)(vi). That is, typically, when larceny is by means of a wrongful credit or debit transaction, the money or goods were wrongfully obtained *from* the merchant or bank, making them the person stolen from. The goods or money at issue belong to the merchant or banks, *see Burton v. United States*, 196 U.S. 283, 302 (1905), and the defendant merely uses the credit or debit card, falsely representing herself as the cardholder, as a means to commit the larceny. *See, e.g., United States v. Sierra*, 62 M.J. 539, 542 (A. Ct. Crim. App. 2005), *aff'd*, 64 M.J. 179 (C.A.A.F. 2006). While it is true that the credit or debit cardholder may also suffer a *consequence* — such as a bank fee or loss of access to funds in an account — the defendant nonetheless did not obtain money or goods *from* the cardholder.

By way of example, in *Lubasky*, with respect to the specifications involving the appellant's use of the widow

---

[4] As noted *infra* pp. 9–10, we don't doubt this is attributable in part to the unfortunate choice of language used to explain this Court's decision in *Cimball Sharpton*.

[5] As explained in the *MCM*, "[p]erson" can refer both to a natural person and to "a government, a corporation, an association, an organization, and an estate. Such a person need not be a legal entity." *MCM* pt. IV, para. 46.c.(1)(c)(iv).

Shirley's credit cards, we found the convictions legally insufficient because the "[a]ppellant did not obtain anything from Shirley. Rather, he obtained those things from other entities. For these reasons, the proper subject of the credit-card-transaction larcenies in this case was not Shirley." *Lubasky*, 68 M.J. at 263. Shirley, the account holder, simply did not own the goods that the appellant obtained from the merchants or the funds the card-issuing bank used to pay for them. *Id.* The appellant obtained nothing *from* Shirley when he used her credit cards. Thus, despite the fact that Shirley was, intuitively, likely inconvenienced and, by any definition, a "victim," nothing was stolen from her in these specifications, and she was the wrong person to name in them. *Id.*

We reiterate, in the usual case of a credit card or debit card larceny, the "person" who should be alleged in the specification is a person from whom something was *obtained*, whether it is goods or money. *Id.* (citing Drafter's Analysis app. 23 at A23–16 (2008 ed.)).

B.

"Alternative charging theories are also available," as long as "the accused wrongfully obtained goods or money" from someone "with a superior possessory interest." Drafters' Analysis app. 23 at A23–17 (2012 ed.). Such alternative theories are the exception, and not, as the ACCA assumed, the rule. Again, *Lubasky* is instructive as to when such alternative theories are warranted, since in the usual case of debit card theft, an accused obtains nothing from the cardholder through an unauthorized use of the cards. *See generally*, Benjamin M. Owens-Filice, *"Where's the Money Lebowski?" – Charging Credit and Debit Card Larcenies Under Article 121, UCMJ*, Army Law., Nov. 2014, at 9 (explaining why cardholders do not own the money in the related account). *Lubasky* was not, however, the "usual case" when it came to the larceny specifications involving the Union Planters Bank (UPB) checking account.

What made *Lubasky* different with respect to the UPB checking account was the appellant's status as a joint account holder, which he obtained by misrepresenting to Shirley and the bank representative that he would only

7

make withdrawals for her benefit, intending all the while to make withdrawals for his own benefit. *Lubasky*, 68 M.J. at 262–63, 265. While we disliked regressing to fixation upon a particular theory of theft, given the purpose of creating Article 121, UCMJ, in the first instance, *MCM* pt. IV, para. 46.c.(1)(a), it was apparent the person from whom Lubasky stole was Shirley by becoming a joint account holder under false pretenses, removing money purportedly for her benefit by virtue of those false pretenses, and keeping it for himself. *Lubasky*, 68 M.J. at 263–64. It was the fiduciary account relationship obtained through fraud, combined with Lubasky's joint account holder status, that made an "alternative charging theory" not only available but viable and necessary with respect to the UPB checking account funds. *See id.* at 264 n.4 (citing *Leffew v. Mayes*, 685 S.W.2d 288, 291 (Tenn. Ct. App. 1984)); *State v. Lavigne*, 57 A.3d 332, 339–40 (Conn. 2012) (holding that "in the case of a joint holder who has not herself contributed any of the funds to the joint account in which she claims an ownership interest, the factual question is whether the other joint holder and sole contributor of the funds, by creation of the joint account, intended to effect an immediate, inter vivos transfer or gift of the funds to the noncontributing joint holder").

*Cimball Sharpton* was another case where the appellant challenged the legal sufficiency of the evidence on the grounds that the wrong "person" was alleged in the specification. *Cimball Sharpton*, 73 M.J. at 300–01. The question in that case was not whether an alternative object of the larceny could be alleged, but rather whether the Air Force was precluded from being the person charged in the specification because the appellant obtained nothing from it. *See id.* at 301–02.

In *Cimball Sharpton*, the Air Force issued the appellant a General Purchase Card (GPC) in her name to purchase medical supplies for the Air Force. *Id.* at 299. The Air Force was the account holder; the appellant was its agent. *Id.* at 299–300. While the agency agreement between the appellant and the Air Force was that the card could only be used for government purchases of medical supplies, *id.* at 299, there was an additional factual twist: the issuing bank, U.S. Bank, had an agreement with the Air Force that charges "that

involve misuse or abuse by the cardholder are not disputable with the Bank…. and the government is obligated to make payment for the transaction." *Id.* at 301 n.2.

The appellant, while aware of the limits on her authority, exceeded that authority and misused the GPC to purchase items for herself. *Id.* at 299–300. By doing so, she induced the Air Force to make payments to U.S. Bank. *Id.* at 300. Indeed, she stipulated that the Defense Finance Accounting Service (DFAS) paid for all charges with appropriated funds. *Id.* In the usual case under the *MCM*, the thefts would have been charged as larceny from the merchants from whom the goods were obtained or from U.S. Bank, which held the GPC account. *Id.* at 301 (citing *MCM* pt. IV, para. 46.c.(1)(h)(vi). What made the Air Force an object of the larceny was not that it was the only one who "suffered the financial loss." *See Cimball Sharpton*, 73 M.J. at 299, 301–02. It is irrelevant, for purposes of larceny, that a merchant is later paid for goods that are wrongfully obtained or a bank repaid for moneys expended to those merchants. *Id.* at 301–02; *see also MCM* pt. IV, para. 46.c.(1)(f)(iii)(C). Rather, it was the Air Force's agreement with U.S. Bank that it would pay all charges that raised the issue of whether the appellant's actions could also be theft from the Air Force. In effect, the agreement between the Air Force and U.S. Bank meant that U.S. Bank (and hence the merchants) would honor any charges made either with apparent or actual authority, and that any wrongful use of the GPC by the appellant would wrongfully induce payment by the Air Force.

Unfortunately, the language we used focused on the Air Force as "the victim," and the one who "suffered the financial loss." *Cimball Sharpton*, 73 M.J. at 299, 301–02. More accurately, it should have stated that the Air Force was an appropriate person to allege in the larceny specification because it was an entity from whom the appellant wrongfully obtained goods or money.[6] *See MCM*

---

[6] The issue granted in *Cimball Sharpton* focused on whether the larceny could be from the Air Force, not on what was stolen, and not on whether only the Air Force was stolen from. While there is precedent supporting the theory, under a legal sufficiency

pt. IV, para. 46.c.(1)(i)(vi). The appellant — the Air Force's agent — exceeded her authority and abused her role as an agent by either obtaining money from the Air Force by wrongfully inducing it to pay funds to U.S. Bank as if the charges were, in fact, authorized purchases, or by wrongfully obtaining goods from the Air Force by keeping goods that she purchased without authority but that, in fact, belonged to the Air Force. *See Cimball Sharpton*, 73 M.J. at 300. Once again, *Cimball Sharpton* was not the usual case. To the extent it can be read to suggest that in a larceny specification the government may name as the object of the larceny any person who suffered a loss or experienced other harm, we clarify that the government should instead name the person or entity from whom the accused actually obtained the goods or money.

## C.

The instant case is not an unusual case — there were no agency relationships, no joint accounts, and no contracts. Our unfortunate choice of language in *Cimball Sharpton* does not change the law, and we urge the Government to cleave to the rule set forth in the *MCM* in the "usual case." *See MCM* pt. IV, para. 46.c.(1)(h)(vi). This is such a case: Appellant's actions constituted a garden-variety larceny by unauthorized use of debit card information, and the usual rule — that the person who was stolen from, or, in the case of computergeeks.com, from whom larceny was attempted, was the merchant from whom the goods were obtained or the bank from whom money was obtained — applies. The account holders here did not own either the goods or the bank funds available to satisfy the debit card purchases.

While it is both intuitively and objectively true that PFC Irvine and SPC Aldrich were "victims" and "suffered the financial loss[es]," *see Cimball Sharpton*, 73 M.J. at 299,

---

analysis, that what the appellant stole from the Air Force was money, *see United States v. Ragins*, 11 M.J. 42, 46 (C.M.A. 1981), it seems the better charging theory would have been that she stole the particular items by exceeding her actual authority and keeping the items that were in effect purchased by the Air Force for herself.

301–02, because of Appellant, he neither took nor obtained nor withheld anything from them. Though he was the but-for cause of their financial problems, that does not constitute larceny *from* them. If a defendant did not steal from the person the government names in the larceny specification, the conviction is legally insufficient. *See Lubasky*, 68 M.J. at 263, 265.

## IV. JUDGMENT

The decision of the United States Army Court of Criminal Appeals is reversed as to Specifications 1 and 2 of Charge VI and the sentence. The findings of guilty as to Specifications 1 and 2 of Charge VI are set aside, and those specifications are dismissed. The remaining findings of guilty are affirmed. The record of trial is returned to the Judge Advocate General of the Army for remand to the Court of Criminal Appeals for reassessment of the sentence, or for a rehearing on sentence, if necessary.