# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

————————————

## No. 201500384

————————————

## UNITED STATES OF AMERICA
Appellee

v.

## DANNY SOTO
Yeoman First Class (E-6), U.S. Navy
Appellant

————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Commander Ian K. Thornhill, JAGC USN.
For Appellant: Commander Brian L. Mizer, JAGC, USN.
For Appellee: Lieutenant Commander Catheryne E. Pully, JAGC, USN; Major Tracey L. Holtshirley, USMC.

————————————

Decided 30 August 2016

————————————

Before FISCHER,[1] RUGH, and CAMPBELL, *Appellate Military Judges*

————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

————————————

PER CURIAM:

A military judge, sitting as a special court-martial, convicted the appellant, pursuant to his pleas, of one specification of wrongful appropriation and three specifications of larceny, in violation of Article 121, Uniform Code of Military Justice, 10 U.S.C. § 921. The military judge sentenced the appellant to confinement for six months, reduction to pay

————————————

[1] Senior Judge Fischer participated in the decision of this case prior to detaching from the court.

grade E-3, and a bad-conduct discharge. The convening authority (CA) approved the adjudged confinement and discharge.[2]

The appellant now claims that his pleas to two of the larceny specifications alleging that he stole money from Navy Federal Credit Union (NFCU) were improvident because witness testimony during sentencing proceedings implied that NFCU did not ultimately "suffer[] the financial loss in this case."[3] We disagree.

## I. BACKGROUND

The appellant was stationed aboard the USS PINCKNEY (DDG 91). On several occasions between 10 October 2014 and 18 November 2014, he entered Master-at-Arms First Class (MA1) RS's office, accessed a locked cash box, and removed the ship's First Class Petty Officer's Association (FCPOA)'s "Navy Cash" card.[4] He then "went to the Navy Cash machine on the ship" and used the machine to transfer money from the "chip" on the card to "the strip on the [card]."[5] The appellant later took the card to an NFCU automated teller machine (ATM) on Naval Base San Diego, and withdrew cash.[6]

On 4 November 2014, the appellant took a Navy Cash card belonging to Yeoman Second Class (YN2) CE. The appellant repeated the aforementioned transfer process, then later withdrew cash from the same NFCU ATM using YN2 CE's card on several occasions before ultimately throwing it away.[7]

In the providency inquiry, the military judge stated that a required element for the two larceny specifications was that the "currency" which the

---

[2] During the pendency of this appeal, the appellant was administratively discharged from the Navy pursuant to a provision in the pretrial agreement. Appellant's Brief of 4 Feb 2016 at 6; Appellate Exhibit 5 at ¶ 16c. The appellant's prior "discharge through administrative channels" does "not affect the power of . . . appellate tribunals to act on the findings and sentence" under Article 66(b)(1), UCMJ. *Steele v. Van Riper*, 50 M.J. 89, 91-92 (C.A.A.F. 1999).

[3] Appellant's Brief at 6.

[4] MA1 RS was responsible for the card as the FCPOA Treasurer and received a "letter of indebtedness" for the money withdrawn by the appellant. Record at 93, 95. The appellant was also a member of the FCPOA, but he had neither a legal right to use the card, nor permission "from anyone with authority . . . to take it." *Id*. at 43, 45.

[5] *Id*. at 51.

[6] Prosecution Exhibit 1 at ¶ 4.

[7] Record at 55-56. ("MJ: . . . . [T]ell me . . . how you got the cash with [YN2 CE's] card? ACC: I did the same thing, sir."); PE 3 at 3 ("Q. Did you withdraw money from any other ATM? A. No . . . .").

appellant "took" must have "actually belonged to the Navy Federal Credit Union."[8] Regarding the larcenies committed using the FCPOA's card, the appellant told the military judge that "the bank" was "out the money."[9] The appellant also agreed the bank was "out the money" from the larcenies he committed using YN2 CE's card.[10]

During sentencing proceedings, YN2 CE mentioned filing fraud claims with NFCU and "Chase Bank as well," but agreed that her account had been credited for the money withdrawn by the appellant.[11] MA1 RS testified that he had issues with the FCPOA's NFCU account,[12] but also stated that Navy Cash, and not NFCU, had paid back the money to the FCPOA.[13] MA1 RS also stated that the money the appellant had paid in restitution was being paid to the "U.S. Navy Treasury."[14] In sentencing argument, trial defense counsel remarked that appellant "is paying back a debt to a bank."[15] The appellant now argues the sentencing witness testimony implying that "Chase Bank," "Navy Cash," and the "U.S. Treasury" were the actual larceny victims was inconsistent with the his providence inquiry statements.

## II. DISCUSSION

We review a military judge's acceptance of a plea of guilty for an abuse of discretion, reversing only if the record as a whole shows a substantial basis in law or fact for questioning the guilty plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). "If after findings but before the sentence is announced the accused makes a statement to the court-martial, in testimony or otherwise, or presents evidence which is inconsistent with a plea of guilty

---

[8] *Id*. at 39.

[9] *Id*. at 53-54 ("MJ: . . . [H]ave you learned whether or not the association itself is out this money or the bank is out the money? Do you understand that question? ACC: Yes, sir. The bank. MJ: . . . . [I]s it your understanding that the bank recognized this as wrongful conduct and credited back the money to the association? ACC: Yes, sir.").

[10] *Id*. at 56-57 ("MJ: . . . . I'm asking if you know whether the credit union recognized this as fraudulent conduct and credited the $1,600 back to [YN2 CE's] account. . . . Who's out the money at this point? ACC: The bank, sir.").

[11] *Id*. at 87, 89 ("Q. You got that money back and they haven't–the bank hasn't recouped that money from you, have they? A. No, ma'am .").

[12] *Id*. at 94 ("A. Everything got frozen; all of our money . . . our Navy Federal account, and our Navy Cash Card.").

[13] *Id*. at 98 ("Q. Okay . . . . they gave you the full $4,140 back recently? A. Navy Cash? Q. Is it Navy Cash or Navy Federal Credit Union? A. Navy Cash . . . yes.")

[14] *Id*. at 99.

[15] *Id*. at 149.

on which a finding is based, the military judge shall inquire into the providence of the plea." RULE FOR COURTS-MARTIAL 910(h)(2), MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.). The military judge may consider information in the stipulation of fact to resolve inconsistencies in the inquiry. *United States v. Hines*, 73 M.J. 119, 124 (C.A.A.F. 2014). We "must find 'a substantial conflict between the plea and the [appellant's] statements or other evidence' in order to set aside a guilty plea. The 'mere possibility' of a conflict is not sufficient." *United States v. Watson*, 71 M.J. 54, 58 (C.A.A.F. 2012) (quoting *United States v. Garcia*, 44 M.J. 496, 498 (C.A.A.F. 1996)).

The appellant claims that his plea can only be provident if, in addition to demonstrating that NFCU owned the ATM, the military judge's inquiry also confirmed that NFCU ultimately "suffered the financial loss in this case."[16] This claim does not follow because "an Article 121, UCMJ, conviction does not turn on identifying the 'victims,' 'impact,' and 'loss' as those terms are commonly used and employed. Rather, it requires, inter alia, that an appellant steal something *from* a person who owns it or has a greater possessory interest in it than the appellant." *United States v. Williams*, 75 M.J. 129, 130 (C.A.A.F. 2016) (citing *United States v. Lubasky*, 68 M.J. 260, 263 (C.A.A.F. 2010) (additional citation omitted). Indeed, the "relevant question in determining the person to name in a larceny specification is" not who ultimately lost the money, but rather "whom did the accused steal the . . . money *from?*" *Id.* at 132.

Here, the appellant admitted to using Navy Cash cards belonging to the FCPOA and YN2 CE to withdraw cash from NFCU's ATM,[17] for each and every card transaction that is the basis of the disputed larceny specifications. The appellant further admitted that NFCU possessed a superior right to the cash than him. Whether NFCU ultimately lost money from the appellant's larceny, or if someone else reimbursed NFCU or the victims, does not raise a substantial question of fact as to whether the larceny was from NFCU.

### III. CONCLUSION

The findings and sentence as approved by the CA are affirmed.

For the Court



R.H. TROIDL
Clerk of Court

---

[16] Appellant's Brief at 6.

[17] PE 1 at ¶ 4; Record at 56-57.