# UNITED STATES NAVY–MARINE CORPS COURT OF CRIMINAL APPEALS

———————————————

**No. 201600038**

———————————————

**UNITED STATES OF AMERICA**
Appellee

v.

**JOSEPH B. FAGGIOLE**
Sergeant (E-5), U.S. Marine Corps
Appellant

———————————————

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judge: Lieutenant Colonel David M. Jones, USMC.
For Appellant: Lieutenant R. Andrew Austria, JAGC, USN.
For Appellee: Major Tracey L. Holtshirley, USMC;
Captain Cory A. Carver, USMC.

———————————————

Decided 31 October 2016

———————————————

Before MARKS, FULTON, and GLASER-ALLEN, *Appellate Military Judges*

———————————————

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Practice and Procedure 18.2.**

———————————————

FULTON, Judge:

A military judge sitting as a general court-martial convicted the appellant, in accordance with his pleas, of one specification of unauthorized absence, one specification of obstruction of justice, one specification of bank fraud, and three specifications of larceny, in violation of Articles 86, 121, and 134, Uniform Code of Military Justice (UCMJ), 10 U.S.C. §§ 886, 921, and 934. The military judge sentenced the appellant to be reduced to pay grade E-1, total forfeitures of pay and allowances, 20 months' confinement, and a dishonorable discharge.

The appellant raises the following three assignments of error: First, that the military judge abused his discretion by accepting his guilty pleas to larceny because account holders rather than financial institutions were alleged to have been the victims of his larceny. Second, he alleges that his conviction for both bank fraud and larceny represents an unreasonable multiplication of charges. Last, he alleges that a sentence that includes a punitive discharge is inappropriately severe. We find no error and affirm.

## I. BACKGROUND

The appellant devised a novel and complex scheme to steal money. He falsely told three other Marines that he was unable use his ATM card to withdraw money from his own account and asked for their help. He told these Marines that he would transfer money from his Navy Federal Credit Union (NFCU) account to their accounts, and that they were to then withdraw the money from their accounts and give it to him. Indeed, the appellant did transfer money to these Marines' accounts. But, unbeknownst to the three helpful Marines, the money hadn't come from the appellant's own bank account. Rather, using personal information available to him as a recruiter as well as through Facebook, the appellant impersonated recruits who were also NFCU account holders. Representing himself as these recruits to NFCU, he directed the transfer of money from the recruits' accounts to the accounts of the Marines who had agreed to help him.

In addition to transferring money to the three Marines' accounts, the appellant also transferred money from the recruits' accounts into his mother's bank account.

### A. Larceny from MF

The first Marine who agreed to help the appellant withdraw money was MF. The appellant told MF that his ATM card was not working and that he needed cash. The appellant asked MF to withdraw cash from his own account and told him that he would reimburse him by transferring money from Sergeant Faggiole's own account to MF's. On six occasions, MF used an ATM to withdraw cash from his own account and gave the cash, totaling $1,800, to the appellant. The appellant reimbursed MF by fraudulently transferring money from a recruit's account to MF's account. MF believed that his account was being replenished from the appellant's account.

### B. Larceny from DF

The second Marine who agreed to help the appellant withdraw money was DF. The appellant told DF that his ATM card was not working and that he could not withdraw cash. DF agreed that if the appellant transferred money into DF's account, DF would withdraw money from his own account and give it to the appellant. On four occasions, the appellant caused money to be

placed in DF's account, and on four occasions DF withdrew money and gave it to the appellant. On the first of these occasions, DF withdrew $400 from an ATM and gave the appellant the money in cash. On the other three occasions, DF wired the money to the appellant using Western Union. Altogether, the appellant received $1,725 from DF. DF did not know that the money being deposited in his account had not come from the appellant's account but instead had been fraudulently transferred by the appellant from the accounts of recruits.

## C. Larceny from WD

The third Marine who agreed to help the appellant withdraw money was WD. The appellant told WD that his ATM card was not working, and that he needed cash. The appellant told WD that if WD would wire money to him, the appellant would pay WD back by transferring money from his account to WD's. WD wired the appellant a $275.00 money order, and the appellant fraudulently transferred money from a recruit's account to WD's account. WD believed that he would be reimbursed with money from the appellant's bank account.

## II. DISCUSSION

## A. Did the appellant steal money from MF, DF, and WD?

In his first assignment of error, the appellant alleges that the military judge erred by accepting the appellant's guilty pleas to larceny. We review a military judge's acceptance of a guilty plea for an abuse of discretion. *United States v. Eberle*, 44 M.J. 374, 375 (C.A.A.F. 1996). We will not overturn a military judge's acceptance of a guilty plea unless the record of trial shows a substantial basis in law or fact for questioning the guilty plea. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008).

The appellant contends that MF, DF, and WD were not properly named as larceny victims in the specifications under Charge IV because they did not have a possessory interest in the money superior to that of the appellant's, and because no special circumstances existed that would have justified an alternative charging theory.

The Court of Appeals for the Armed Forces (CAAF) recently observed that "lower courts continue to flounder and misstep" in identifying the appropriate party to be named as a victim in a larceny specification. *United States v. Williams*, 75 M.J. 129, 132 (C.A.A.F. 2016). Wrongfully engaging in a credit, debit, or electronic transaction to obtain money or a negotiable instrument is usually a larceny of money from the entity presenting the money or negotiable instrument. MANUAL FOR COURTS-MARTIAL, UNITED STATES (2012 ed.), Part IV, ¶ 46.c.(1)(i)(vi). Other theories of charging may be appropriate, or even necessary, as long as the specification alleges the accused wrongfully

obtained money from a person or entity with a superior possessory interest. *Williams*, 75 M.J. at 132. The mere fact that a person or entity experiences a loss or other consequence as a result of a larceny is neither necessary nor sufficient to make that person or entity the charged victim. *Id.* at 130 ("[A]n Article 121, UCMJ, conviction does not turn on identifying the 'victims,' 'impact,' and 'loss' as those terms are commonly used and employed."). The test is whether the accused received, as a result of a false pretense, property from a person or entity with a right to possess the property superior to that of the accused. *Id.* at 132.

Although the appellant used one overarching scheme to steal money from MF, DF, and WD, the method by which he received the money from each was slightly different, and requires separate analysis.

### 1. Larceny from MF

The appellant pleaded guilty to stealing from MF, admitting that he falsely told MF that he could not withdraw funds from his own account and that he would transfer funds from his account to MF's. Because of this false pretense, MF withdrew cash from an ATM and gave the cash to the appellant. Appellant now alleges that NFCU, not MF, should have been named in the specification as the victim. The appellant contends that NFCU retained a superior interest in the money MF withdrew, and that "NFCU suffered the actual loss of funds, not MF."[1]

We find that MF is appropriately named as the victim of this larceny. First, it is far from clear that this larceny is a "credit, debit, or electronic transaction" as contemplated by the Manual for Courts-Martial. The appellant did not use a credit or debit card to obtain money from a financial institution. Rather, he made a false representation to MF who, because of the false representation, handed him currency. As for the claim that NFCU suffered the actual loss of funds, we find this possibility irrelevant. The fact that NFCU might have suffered a financial consequence does not necessarily make that institution the appropriate victim named in the specification. *Id.* at 132.

The appellant's claim that NFCU had a superior possessory interest in the money is also unpersuasive. MF withdrew money from his own account. He possessed this money in good faith before giving it to the appellant. There is no reason for us to trace the source of the money through MF, NCFU, and the recruit who the appellant impersonated in an attempt to determine who among all the victims had the superior possessory interest. Whatever MF's possessory interest was in relation to the other victims' interests, it was certainly superior to the appellant's. Even if NFCU had an interest superior

---

[1] Appellant's Brief of 4 May 2016 at 13.

to MF's, "[t]wo legal interests may coexist in the same property and the invasion of either may sustain a larceny prosecution." *United States v. Leslie*, 13 M.J. 170, 172 (C.M.A. 1982); *see also United States v. Faircloth*, 45 M.J. 172, 174 (C.A.A.F. 1996) (noting that a co-payee on a check has a separate possessory interest subject to invasion by other payee); *People v. Hansen*, 192 N.E.2d 359, 368 (Ill. 1963) (holding that where property is held in bailment, either the bailor or the bailee may be considered the victim of a theft). In short, the appellant used a false pretense to obtain money from MF, and MF's possessory interest in the money was superior to the appellant's. We find that the military judge did not abuse his discretion in accepting the appellant's guilty plea to Specification 5 of Charge IV.

*2. Larceny from DF*

The appellant used the same basic scheme with DF on four different occasions. On the first of these, DF responded to the false pretense by withdrawing cash from an ATM and giving it to the appellant. We find that this constituted a larceny from DF for the reasons the same fact pattern constituted a larceny from MF.

The other three occasions, DF wired the money to the appellant using Western Union. The appellant now argues that Western Union or NFCU should have been named in the specification as the victims of this larceny. We disagree. We find that although Western Union was involved in the transfer, the appellant's actions here do not constitute "credit, debit, or electronic transactions to obtain money" as that expression is used in the Manual for Courts-Martial, and that the government need not have alleged that Western Union or NFCU was the victim of the larceny. The CAAF explained in *Williams* that "credit, debit or electronic transactions" are typically those in which the goods or money belong to the merchant or bank, "and the defendant merely uses the credit or debit card, falsely representing herself as the cardholder, as a means to commit the larceny." *Williams*, 75 M.J. at 132 (citation omitted). That is not what this appellant did. The appellant did not falsely represent himself as someone else to Western Union or to a bank to get money. Rather, he falsely told DF that he could not access his own account and, as a result of this false pretense, DF wired money to the appellant.

This specification is less analogous to *Williams* and more analogous to cases in which service members steal increased housing allowance by falsely pretending to be married. A service member who pretends to be married and wrongfully receives money in his account does not steal from the bank when he withdraws the stolen money from his account at an ATM. *See generally United States v. Antonelli*, 35 M.J. 122, 127 (C.M.A. 1992) (noting that allowances which Antonelli was not entitled to were "property of the United

States"). Rather, he has made a false pretense to the government and induced the government to transfer money to him. *See generally United States v. Hall*, 74 M.J. 525, 527-31 (A.F. Ct. Crim. App. 2014) (entering into a "sham marriage" and receiving a housing allowance was larceny by false pretenses of military property of the United States). We find that when the appellant induced DF to wire him money through the use of a false pretense directed at DF, the appellant stole that money from DF.

### 3. Larceny from WD

The appellant used this same scheme on WD one time. He falsely told WD that he could not use his ATM card, and asked WD to send him money. WD sent the appellant a $275 money order. As was the case with the theft from DF, we find that the appellant did in fact steal money from WD, and that WD is appropriately named as the victim in the specification. There is no evidence in the record that the appellant made any false pretense to any bank or other financial institution that caused it to give the appellant money. WD was properly named in the specification as the victim of this larceny.

We find no substantial basis in law or fact to question any of the appellant's three pleas of guilty to larceny and conclude the military judge did not abuse his discretion by accepting them. *See Inabinette*, 66 M.J. at 322.

## B. Unreasonable multiplication of charges

The appellant next contends that his convictions for both bank fraud and larceny constitute an unreasonable multiplication of charges. Although the pretrial agreement prevented him from raising the issue at trial, the military judge raised the issue with counsel to solicit their views. After considering the factors announced in *United States v. Quiroz*, 55 M.J. 334, 338-39 (C.A.A.F. 2001), the military judge found that the charges and specifications do not represent an unreasonable multiplication of charges. We agree.

We consider five factors when determining if the government has unreasonably multiplied charges: (1) Did the accused object at trial? (2) Is each charge and specification aimed at distinctly separate criminal acts? (3) Does the number of charges and specifications misrepresent or exaggerate the appellant's criminality? (4) Does the number of charges and specifications unfairly increase the appellant's punitive exposure? (5) Last, is there any evidence of prosecutorial overreaching or abuse in the drafting of the charges? *Quiroz*, 55 M.J. at 338-39. These factors are weighed together, and "one or more factors may be sufficiently compelling." *United States v. Campbell*, 71 M.J. 19, 23 (C.A.A.F. 2012).

Applying the *Quiroz* factors to this case, we find that the convictions for bank fraud (charged under Article 134, UCMJ as a violation of 18 U.S.C. §

1344) and larceny do not represent an unreasonable multiplication of charges.

First, we note that the appellant did not object at trial. While we do not apply a blanket forfeiture rule, this factor weighs against the appellant.

We find that the second and third factors cut against the appellant as well, because the two charges are aimed at distinctly separate criminal acts. The facts underlying the bank fraud conviction are distinct from the facts that constitute the appellant's larcenies. The appellant admitted that he committed bank fraud by impersonating NFCU customers, by logging in to NFCU customers' accounts without their permission, and by transferring funds from their accounts to his mother and to other Marines. Although commission of some of these acts facilitated the larcenies the appellant was convicted of, the acts constituting the offense are distinct. The bank fraud statute protects the government's interest in the soundness and integrity of financial institutions, which is a different purpose than Article 121, UCMJ. *See United States v. Lewis*, 67 F.3d 225, 230 (9th Cir. 1995). Indeed, NFCU did suffer a financial consequence as a result of the appellant's bank fraud.

Turning to the fourth factor, the appellant faced an additional 30 years of confinement as a result of being charged with bank fraud. This is a large increase in punitive exposure. But we are not convinced it is an unfair increase, because the potential punishment serves to deter a distinct harm. Finally, the record contains no indications of prosecutorial overreaching.

Taken together, we find that the military judge did not abuse his discretion by finding that convictions for larceny and bank fraud do not constitute an unreasonable multiplication of charges in this case.

**C. Sentence appropriateness**

The appellant argues that a sentence that includes a punitive discharge is inappropriately severe. We disagree.

We review sentence appropriateness *de novo. United States v. Baier*, 60 M.J. 382, 384-85 (C.A.A.F. 2005). Under Article 66(c), UCMJ, this court independently reviews sentences within its purview and only approves that part of a sentence which it finds should be approved. *Id.*

Our review of the facts of this case leaves us convinced that the appellant's sentence is appropriate. The appellant used the trust placed in him as a recruiter to engage in an elaborate scheme to steal money. Having been entrusted with sensitive personal information as a recruiter, the appellant used that information to impersonate bank customers and transfer money out of their accounts. He repeatedly involved other Marines who trusted him in his scheme and obtained money from them. Then the

appellant absented himself from his place of duty and returned only upon being apprehended.

Although the appellant faced up to 47 years of confinement, he was awarded 20 months—a small fraction of the maximum. We find that a sentence of 20 months' confinement, reduction to pay grade E-1, total forfeiture of pay and allowances, and a dishonorable discharge is appropriate.

### III. CONCLUSION

The findings and the sentence are affirmed.

Senior Judge MARKS and Judge GLASER-ALLEN concur.

For the Court

R.H. TROIDL
Clerk of Court