# UNITED STATES ARMY COURT OF CRIMINAL APPEALS

Before
MULLIGAN, FEBBO, and SCHASBERGER
Appellate Military Judges

**UNITED STATES, Appellee**
v.
**Specialist LONNIE L. LOVETT**
**United States Army, Appellant**

ARMY 20170674

Headquarters, 1st Infantry Division and Fort Riley
Jason J. Elmore and Robert Shuck, Military Judges
Colonel Jerrett W. Dunlap, Jr., Staff Judge Advocate

For Appellant:  Major Todd W. Simpson, JA; Major Brian J. Sullivan, JA (on brief).

For Appellee:  Colonel Steven P. Haight, JA; Major Hannah E. Kaufman, JA; Lieutenant Colonel Teresa T. Phelps, JA (on brief).

25 January 2019

---------------------------------
MEMORANDUM OPINION
---------------------------------

*This opinion is issued as an unpublished opinion and, as such, does not serve as precedent.*

SCHASBERGER, Judge:

Appellant pleaded guilty to stealing checks from the U.S. mail.  The specification to which appellant pleaded guilty alleged the checks were "property of the United States."   Appellant now argues his plea was improvident because the forty-eight checks he stole from the U.S. mail—and then fraudulently endorsed and deposited in his personal checking account—were never "property of the United States" for the purposes of Article 121, Uniform Code of Military Justice (UCMJ), 10 U.S.C. § 921.

After careful consideration, we conclude the United States had a temporary possessory interest in the checks while those checks were under government custody and control in the U.S. mail.  This possessory interest is sufficient to render the stolen checks "property of the United States" for the purposes of Article 121, UCMJ. We therefore find appellant was provident to the offense of larceny.

A military judge sitting as a general court-martial convicted appellant, pursuant to his pleas, of one specification of larceny, one specification of wrongfully taking the mail, and one specification of wrongfully opening the mail, in violation of Articles 121 and 134, UCMJ. The military judge found the three specifications constituted an unreasonable multiplication of charges for sentencing purposes, and merged them accordingly. The military judge then sentenced appellant to a bad-conduct discharge, twelve months of confinement, and a reduction to the grade of E-1. The convening authority approved the sentence as adjudged.

## BACKGROUND

After appellant suffered a heart attack, he could not serve as a field artilleryman. Instead, he began the process of being medically separated from the Army. Appellant was assigned duties as a mail clerk while undergoing his medical evaluation board and waiting for his medical retirement.

Appellant's unit deployed, leaving appellant as one of the rear detachment mail clerks. Over several months, while acting as a mail clerk, appellant intercepted forty-seven pieces of mail containing checks. He took those envelopes from the mail room, opened the letters, removed the checks, forged endorsements, and deposited the checks into his Navy Federal Credit Union account. The total face value of the forty-seven checks appellant took in this way was $9,449.88. Appellant also took a blank check from a box of checks he found among unclaimed mail, made the check out to himself in the amount of $300, and deposited it.

Appellant's misconduct was discovered and the government charged him with the three specifications listed above. The Specification of Charge I initially read:

> In that Specialist Lonnie L. Lovett, U.S. Army did at or near Fort Riley, Kansas, on divers occasions between on or about 12 July 2016 and on or about 17 January 2017, steal approximately forty-eight checks, military property, of a value of about $9,449.88, the property of the United States government.

After arraignment, appellant entered into a pretrial agreement with the convening authority, wherein appellant agreed to plead guilty to all charges and specifications. Prior to the commencement of trial, the military judge held a conference with counsel from both sides under Rule for Courts-Martial (R.C.M.) 802. At trial, the military judge put on the record a synopsis of what was discussed. One of the issues covered in the R.C.M. 802 session was the nature of the property. Prior to the entry of appellant's plea, the government moved to amend the Specification of Charge I. First, the government moved to increase the value of the stolen checks from $9,449.88 to $9,749.88. Second, the government moved to strike the words "military property" from the specification. The defense did not object to either change.

During the providence inquiry, the military judge asked if appellant took the check "from the possession of the U.S. government." Appellant answered "Yes, sir." Appellant also entered into a stipulation of fact, which, in relevant part, states, "[t]he accused agrees that the definition of government property, encompasses cash, checks and other securities within mail-matter transiting the US [sic] Postal System on a military installation and remain military property until delivered to their intended recipient."

## LAW AND DISCUSSION

We review a military judge's decision to accept a guilty plea for an abuse of discretion. *United States v. Inabinette*, 66 M.J. 320, 322 (C.A.A.F. 2008). A guilty plea will only be set aside if we find a substantial basis in law or fact to question the plea. *Id.* (citing *United States v. Prater*, 32 M.J. 433, 436 (C.M.A. 1991)). This court applies the "substantial basis" test by determining whether the record raises a substantial question about the factual basis of appellant's guilty plea or the law underpinning the plea. *Id. See also* UCMJ art. 45(a); R.C.M. 910(e).

Our superior court has explained, "Article 121, UCMJ, proscribes the wrongful taking, obtaining, or withholding, from the possession of the owner *or of any other person*, money or an article of value of any kind with intent to permanently deprive." *United States v. Simpson*, 77 M.J. 279, 282 (C.A.A.F. 2018) (emphasis added). To prevail on a charge of larceny, the government must prove "the accused wrongfully obtained money or goods from a person or entity with a superior possessory interest." *Id.* (quoting *United States v. Williams*, 75 M.J. 129, 132 (C.A.A.F. 2016) (internal quotation marks, alteration marks, and further citations omitted).

Appellant relies on *Williams* and *Simpson* to argue that he did not take property from the United States because "appellant obtained $9,749.88 not from the government, but from his bank."[1] Were appellant charged with larceny by means of an electronic transfer of funds—as was the case in *Simpson* and *Williams*—he would be correct. In this case, however, appellant was charged with the theft of the checks themselves. He was not charged with larceny of the funds he eventually obtained by depositing the checks.

---

[1] Appellant's argument has much initial appeal. So much, in fact, that the government conceded this issue on brief. We ordinarily accept such concessions, and we always appreciate such candor. In this case, however, we do not accept the concession because we assess appellant's argument—and the government's acceptance thereof—turn on a misunderstanding of what appellant was charged with stealing. Appellant was not charged with stealing $9,749.88 from a bank. Appellant was charged with stealing forty-eight *checks* from the United States.

Because appellant relies on the theory that the United States had no possessory interest in the *funds* appellant eventually received after depositing the checks, it is essentially uncontested that the *checks themselves* were in the possession of the United States and appellant took the checks from the possession of the United States.

Even if we treat appellant's argument as a claim the United States had no possessory interest in the checks themselves, appellant's claim fails. A possessory interest includes, "[t]he present right to control property, including the right to exclude others, by a person who is not necessarily the owner." Possessory Interest, *Black's Law Dictionary*, (9th ed. 2009). This is precisely the relationship between the United States and items deposited in the U.S. mail. The Second Circuit has explained that when a person deposits items into the mail that person is, "voluntarily relinquishing custody and control over them for the indefinite period (at least a couple of days) required for forwarding and delivery." *United States v. Place*, 660 F.2d 44, 52 (2d Cir. 1981). Such items are in the "lawful custody" of postal agents until delivery. *Id.* The United States exercises custody and control over items in the mail and exercises its right to exclude all others from such items until delivery. *See, e.g.,* 18 U.S.C. § 1702 (prohibiting unauthorized persons from taking in the mail). Thus, the United States had a possessory interest in the mailed checks while they were in transit.

Nothing in appellant's providence inquiry leads us to believe he was improvident to taking forty-eight checks from the possession of the United States. Similarly, nothing leads us to believe appellant was improvident to the fact the United States had a possessory interest in the checks when appellant took them. Appellant was likewise fully provident to taking the checks with the intent to permanently deprive the United States of such property, to which it had a superior—albeit temporary—possessory interest as opposed to appellant. The only remaining question is whether appellant was also provident to the value of the property he stole.

Appellant claims, "[i]f the checks were government property, they were not worth $9,749.88 to the government." Long ago, however, our superior court's predecessor held, for the purposes of Article 121, the value of a check that has been completed by its drawer, is the face value on the check. *United States v. Windham*, 36 C.M.R. 21, 23 (C.M.A. 1965). By contrast, the value of a blank check is nominal. *United States v. Frost*, 46 C.M.R. 233, 236 (C.M.A. 1973); *United States v. Harvey* 2 M.J. 856, 857 (A.C.M.R. 1976).

The government's original specification, alleging appellant stole forty-eight checks valued at $9,449.88 reflected the correct value of the stolen checks at the time appellant stole them. Although appellant later fraudulently completed one blank check and thereby acquired an additional $300 from his bank, the check's

value was merely nominal at the time he took it from the possession of the United States. Again, appellant was convicted of stealing *checks*, not the *funds* appellant later acquired by fraudulently depositing the checks.[2]

## CONCLUSION

We affirm only so much of the finding of guilty of The Specification of Charge I as finds that appellant: "did at or near Fort Riley, Kansas, on divers occasions between on or about 12 July 2016 and on or about 17 January 2017, steal approximately forty-eight checks, of a value of about $9,449.88, the property of the United States government."

The remaining findings of guilty and the sentence are AFFIRMED.[3]

Senior Judge MULLIGAN and Judge FEBBO concur.

FOR THE COURT:

MALCOLM H. SQUIRES, JR.
Clerk of Court

---

[2] Whether the United States had any right to negotiate the checks is irrelevant to whether it had a possessory interest in them. Possessory interest is not synonymous with ownership. A bailee will frequently lack the lawful authority to sell or otherwise dispose of bailed property, but that does not change the valuation of the property or the identity of the party from whom the property is taken if a thief steals from the bailee.

[3] In reassessing the sentence we are satisfied that the sentence adjudged on the charges and specifications as affirmed by this court would have been at least a bad-conduct discharge, confinement for twelve months, and a reduction to the grade of E-1. *See United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986); *United States v. Winckelmann*, 73 M.J. 11, 15-16 (C.A.A.F. 2013). The gravamen of appellant's misconduct was taking and opening the mail, and depriving the recipients of receiving the checks. Further, the military judge merged the three specifications as an unreasonable multiplication of charges for sentencing purposes.