*This opinion is subject to administrative correction before final disposition.*

# United States Navy–Marine Corps
# Court of Criminal Appeals

Before
HACKEL, KISOR, and MIZER
Appellate Military Judges

_____

**UNITED STATES**
*Appellee*

**v.**

**Moises A. SALGADO**
Staff Sergeant (E-6), U.S. Marine Corps
*Appellant*

**No. 202300224**

_____

Decided: 14 February 2024

Appeal from the United States Navy-Marine Corps Trial Judiciary

Military Judges:
John J. Stephens (trial)
Derek D. Butler (Entry of Judgment)

Sentence adjudged 4 May 2023 by a general court-martial convened at Marine Corps Base Quantico, Virginia, consisting of a military judge sitting alone. Sentence in the Entry of Judgment: reduction to E-1, confinement for six months, and a bad-conduct discharge.

For Appellant:
*Captain Kimberley D. Hinson, JAGC, USN*

Judge MIZER delivered the opinion of the Court, in which Senior Judge HACKEL and Senior Judge KISOR joined.

––––––––––––––––––––

**This opinion does not serve as binding precedent, but may be cited as persuasive authority under NMCCA Rule of Appellate Procedure 30.2.**

––––––––––––––––––––

MIZER, Judge:

Appellant was convicted, consistent with his pleas, of one specification of larceny, in violation of Article 121, Uniform Code of Military Justice (UCMJ),[1] and one specification of fraudulent use of credit cards, debits cards, and other access devices, in violation of Article 121a, UCMJ.[2]

Many of the judge advocates appearing at courts-martial today have no experience with military justice as it existed before the enactment of the Military Justice Act of 2016 (MJA 16). And so it is incumbent upon senior judge advocates, and especially military judges, to remain vigilant in cases that straddle the MJA 16's effective date. This case presents a legacy issue that appears to have evaded notice before being submitted to this Court without assignment of error.[3]

## I. BACKGROUND

In the 1980s, Congress, along with nearly every state, enacted legislation specifically penalizing the misuse of credit cards and other so-called access devices.[4] But the UCMJ remained unchanged, and by 2015, it was apparent the

––––––––––––––––––––

[1] 10 U.S.C. § 921.

[2] 10 U.S.C. § 921a.

[3] We note that, at his arraignment on 16 February 2023, Appellant unambiguously elected to be sentenced pursuant to the MJA 16. R. at 5. But when he appeared at the next Article 39(a) session of his court-martial on 4 May 2023, he pleaded guilty pursuant to a pretrial agreement and was sentenced under the pre-MJA 16 procedures. R. at 10. The Record contains no explanation for this disparity, and Appellant has waived any issue this may have presented. We are also unable to identify prejudice under the circumstances of this case.

[4] Dep't of Defense, Report of the Military Justice Review Group 894 (2015) (citation omitted).

UCMJ's 1950s-era larceny statute, Article 121, UCMJ, was a clumsy tool with which to address modern-day, access-device fraud. As noted by the Military Justice Review Group (MJRG)[5] in December 2015, Article 121, UCMJ, required the Government to allege from whom the accused had stolen money, and in the case of a wrongful credit or debit transaction, that entity was usually a bank.[6]

This caused charging authorities and the Courts of Criminal Appeals to repeatedly "flounder and misstep"[7] regarding this elemental requirement, which led to a string of decisions[8] and summary dispositions[9] by the Court of Appeals for the Armed Forces.

The MJRG sought to remedy this situation by proposing the adoption of a new statute, Article 121a, UCMJ, which would specifically address access-device fraud. Congress agreed, and Article 121a, UCMJ, took effect on 1 January 2019.

## II. DISCUSSION

While the MJRG was endeavoring to address access-device fraud in the military, Appellant was endeavoring to commit it. From his perch as his unit's Agency Program Coordinator (APC) for the Government Travel Charge Card (GTCC) Program, which at the time of the charged offenses was administered by Citibank, Appellant was able to see the balances that his fellow Marines had on their Citibank credit cards.

Beginning in September 2017, Appellant transferred money from the Citibank accounts of eight Marines to his personal Navy Federal Credit Union

---

[5] The MJRG, "which was so ably chaired by Senior Judge Andrew Effron," *United States v. Hale*, 78 M.J. 268, 275 (C.A.A.F. 2019) (Ohlson, J. concurring and dissenting in part), is responsible for the bulk of changes Congress ultimately adopted in the MJA 16.

[6] *Id.* at 893 (citing Manual for Courts-Martial, United States (2012 ed.) (MCM), pt. IV, para. 46.c.(1)(i)(vi)).

[7] *United States v. Williams*, 75 M.J. 129, 132 (C.A.A.F. 2016).

[8] *United States v. Lubasky*, 68 M.J. 260 (C.A.A.F. 2010); *United States v. Sharpton*, 73 M.J. 299 (C.A.A.F. 2014).

[9] *United States v. Gaskill*, 73 M.J. 207 (C.A.A.F. 2014); *United States v. Endsely*, 74 M.J. 216 (C.A.A.F. 2015).

(NFCU) account.[10] By the time of the last of these transactions on 10 December 2018, he had stolen $21,966.19.

As will become relevant later, Appellant made one more fraudulent transaction on 21 January 2019—20 days after Article 121a, UCMJ, took effect. As with the others, he transferred money from Citibank to his NFCU account, this time in the amount of $1,336.46.

The Government charged Appellant's two-year, credit-card-fraud scheme under both Article 121 and Article 121a, UCMJ, a decision that in and of itself should have prompted everyone to proceed with caution.

Appellant signed a stipulation that he transferred money "out of other Marine's [sic] Citibank accounts and into my own."[11] He further explained during the providence inquiry that as "the APC, [he] could see other Marines' Citibank balances that had extra money from the DTS"[12] and "could access their Citibank accounts and request to transfer their excess balances" to his NFCU account.[13]

When the military judge asked Appellant about a Citibank spreadsheet documenting the fraud, and asked if Appellant had transferred money from Citibank to NFCU, Appellant admitted that he had.[14] Appellant added, "Citibank was the main program for all that…and that's how I did it, sir."[15] He then discussed each named victim and described how he used Citibank's accounts to transfer money to his NFCU account.[16]

This case is on all fours with *United States v. Simpson*, and, as in *Simpson*, here, "the military judge abused his discretion in failing to reject [Appellant's] guilty plea and entering a finding of guilty as to the larceny specification."[17] As

---

[10] Pros. Ex. 1 at 2.

[11] Pros. Ex. 1 at 2.

[12] The Defense Travel System (DTS) is the Department of Defense's (DoD) official travel system.

[13] R. at 30.

[14] R. at 30-31.

[15] R. at 31.

[16] R. at 32 ("Same thing, Your Honor. Excess amount from Citibank transferred to my NavyFed account…Your Honor, money from Citibank, excess amount transferred to my NavyFed account.").

[17] 77 M.J. 279, 284 (C.A.A.F. 2018).

a matter of law, the money stolen by Appellant belonged to Citibank, and Appellant "obtained nothing from the account holders."[18] "Appellant's actions constituted a garden-variety larceny by unauthorized use of debit card information, and the usual rule—that the person stolen from…was the merchant from whom the goods were obtained or the bank from whom the money was obtained—applies."[19]

"While it is both intuitively and objectively true" that the eight Marines named in the larceny specification were victims and suffered losses, and Appellant was "the but-for cause of their financial problems, that does not constitute larceny *from* them."[20]

But *because* this case is on all fours with *Simpson*, we conclude, as in *Simpson*, "the stipulation of fact and the providence inquiry provide an adequate basis to affirm a finding of guilty to the lesser included offense of attempted larceny under Article 80, UCMJ[.]"[21] Appellant "did, in fact, commit and plead guilty to larceny—he was merely mistaken about who he was stealing from."[22] Appellant's admissions during the providence inquiry, together with the stipulation of fact, establish all the elements of the lesser included offense of attempted larceny and we affirm a finding of guilty to that offense.

This Court has broad discretion to cure prejudicial error by reassessing the sentence and, in accordance with *United States v. Winckelmann*, we do so here.[23] We note that Appellant was sentenced by a military judge who, with agreement of the parties, wrongly determined the maximum authorized punishment to include 15—instead of 20—years of confinement.[24] The violation of Article 121a, UCMJ, alleged in Charge II, authorizes a maximum punishment including 15 years of confinement just for the $1,336.46 theft that occurred on 21 January 2019. And we leave Appellant's conviction for *that* offense undisturbed.

Further, our decision to affirm the lesser included offense of attempt under Charge I does not impact the five additional years of confinement Appellant

---

[18] *Id.* at 283 (citing *United States v. Williams*, 75 M.J. 129, 134 (C.A.A.F. 2016)).

[19] *Williams*, 75 M.J. at 134.

[20] *Id.* (emphasis in original).

[21] *Simpson*, 77 M.J. at 284 (citation omitted); Article 59(b), UCMJ.

[22] *Id.* at 285.

[23] 73 M.J. 11, 13 (C.A.A.F. 2013).

[24] R. at 38.

faced for attempting to steal $21,966.19 from eight other Marines.[25] We are confident that, absent the error set forth above, the sentence adjudged would have been at least as severe as the adjudged sentence.[26] A sentence to confinement for six months, reduction to E-1, and a bad-conduct discharge[27] is also appropriate for an Appellant who abuses a position of trust to steal $23,302.65, regardless of whether, as a matter of law, the victim is a bank or his fellow Marines.

## III. CONCLUSION

After careful consideration of the record and brief of appellate counsel, the finding of guilty as to Specification 1 of Charge I, larceny, is **SET ASIDE**, and we **AFFIRM** instead a finding of guilty to the lesser included offense of attempted larceny under Article 80, UCMJ. Charge II and its sole specification are **AFFIRMED**. The sentence, as reassessed, is **AFFIRMED**.[28]



FOR THE COURT:

MARK K. JAMISON
Clerk of Court

---

[25] *See* MCM (2019 ed.), pt. IV, para. 4.e; para. 64.d.(c).

[26] *United States v. Sales*, 22 M.J. 305, 308 (C.M.A. 1986).

[27] Our decision does not impact the apparent suspension of Appellant's bad-conduct discharge, which was negotiated between the parties below.

[28] Articles 59 & 66, UCMJ.